STATE v. STERLING L. HICKS.

(Filed 2 May, 1951.)

**1. Constitutional Law § 36—**

No person shall be twice put in jeopardy for the same offense.

**2. Criminal Law § 21—**

Upon defendant's plea of former acquittal, whether the facts alleged in the second indictment, if given in evidence, would sustain a conviction under the first indictment is to be determined by the court; whether the same evidence would support a conviction in each case is to be determined by a jury from extrinsic testimony if the plea of former jeopardy avers facts *dehors* the record showing the identity of the offenses.

**3. Same—**

Where the plea of former jeopardy avers no facts *dehors* the record showing the identity of the offenses, but merely sets forth the two indictments and the result of the former trial and draws the legal conclusion that defendant was being twice put in jeopardy for the same offense, *held:* the plea is determinable by the court and its refusal to submit issues to the jury as to the identity of the prosecutions is without error.

**4. Same—**

Acquittal of maliciously conspiring to damage or injure the property of one person will not support a plea of former jeopardy in a prosecution for maliciously conspiring to injure the property of another person, even though the evidence in both prosecutions is virtually the same except as to the ownership of the property.

**5. Criminal Law § 12b—**

Our courts have jurisdiction of a prosecution for conspiracy if any one of the conspirators commits within the State an overt act in furtherance of the common design, notwithstanding that the unlawful agreement was made outside the State.

**6. Property § 2b—**

Transformers placed upon the land of another without being physically annexed thereto retain the character of personalty, *a fortiori* where the contract with the landowner specifies they should remain the property of the owner of the transformers.

**7. Property § 3—**

Evidence tending to show defendant's participation in a conspiracy to damage or injure transformers which the owner had placed upon the land of another without annexation under a contract that they were to remain its property, *held* sufficient to support conviction of conspiracy to injure the personal property.

**8. Criminal Law § 81c (4)—**

Where defendant is convicted on two counts, and equal concurrent sentences are imposed on each, error relating solely to one count is unavailing on appeal when no error was committed in the trial in respect to the other count.

**9. Criminal Law § 42d—**

It is competent for a co-conspirator to testify that he was then serving sentence for his offense to forestall a contention on the part of defendant conspirator that the witness was testifying to obtain personal immunity.

**10. Criminal Law § 42c—**

A soldier witness may testify that he appeared as a witness in obedience to military orders for the purpose of counteracting the implication made by the defense on his cross-examination that he was a hired witness.

**11. Criminal Law § 32½—**

A witness who has heard defendant talk and who expresses his opinion that the voice he heard on the telephone was that of defendant, may testify as to the telephone conversation, the witness' lack of assurance as to the identity of the speaker going to the weight of the evidence and not to its admissibility, especially where the telephone conversation contains internal evidence tending to identify defendant as the speaker at the other end of the line.

**12. Criminal Law § 38c—**

Where the evidence tends to show that defendant furnished dynamite to his co-conspirator pursuant to a conspiracy to damage personalty, the State may properly introduce in evidence the dynamite which the co-conspirator found at the place designated by defendant in a telephone conversation and which was in the witness' possession at the time he was apprehended in attempting to consummate the conspiracy.

**13. Criminal Law § 81c (3)—**

The unsuccessful effort of the solicitor to have a witness identify certain dynamite caps connected with the offense cannot be prejudicial when the dynamite caps are not introduced in evidence.

**14. Criminal Law § 32e—**

In a prosecution for conspiracy to damage transformers used in connection with a radio station, antecedent threats made by defendant to injure the broadcasting company and his threats and expressions of ill will against the company are competent to show intent and motive.

**15. Criminal Law § 40d—**

The solicitor may impeach the defendant as a witness by cross-examining him as to antecedent acts of misconduct. .

**16. Criminal Law § 81c (2)—**

Exceptions to the charge will not be sustained when the charge read contextually is free from prejudicial error.

APPEAL by defendant from *Clement, J.,* and a jury, at the January Term, 1951, of MECKLENBURG.

Criminal prosecution for conspiracy tried upon a two-count indictment.

The first count alleges that the defendant conspired "with Chesley Morgan Lovell and other persons to the State unknown" to violate G.S. 14-127 by maliciously committing damage and injury upon the real property of the Duke Power Company, and the second count charges that the defendant conspired "with Chesley Morgan Lovell and other persons to the State unknown" to commit the misdemeanor denounced by G.S. 14-160 by wantonly and willfully injuring the personal property of the Duke Power Company, to wit: "electrical transformers and other equipment of said Duke Power Company . . . located upon and near the property of the Jefferson Standard Broadcasting Company."

The events set forth in the next two paragraphs antedated the trial on the present indictment.

The defendant and Chesley Morgan Lovell made personal appearances at the March Term, 1950, of the Superior Court of Mecklenburg County to answer two consolidated indictments numbered respectively 15,772 and 15,773. Indictment 15,772 charged that the defendant "and Chesley Morgan Lovell and other persons to the State unknown" committed the felony denounced by G.S. 14-50 by conspiring "to wilfully and maliciously injure . . . a building owned by the Jefferson Standard Broadcasting Company, which said building was then and there in actual use by said Jefferson Standard Broadcasting Company for business purposes, by the use of dynamite and other high explosives." Indictment 15,773 contained two counts. The first count alleged that the defendant "and Chesley Morgan Lovell and other persons to the State unknown" conspired to violate G.S. 14-127 by maliciously committing damage and injury upon the real property of the Jefferson Standard Broadcasting Company, and the second count averred that the defendant "and Chesley Morgan Lovell and other persons to the State unknown" conspired to

commit the misdemeanor defined by G.S. 14-160 by wantonly and wilfully injuring the personal property of the Jefferson Standard Broadcasting Company."

Lovell pleaded guilty to the consolidated indictments, and was sentenced to imprisonment. A jury trial was had as to the defendant, who denied guilt. Virtually the same testimony was adduced by both the prosecution and defense at the March Term, 1950, as was presented by them at the trial now under review. The presiding Judge acquitted the defendant upon the second count in indictment 15,773 under G.S. 15-173 by sustaining his motion for a compulsory nonsuit thereon at the close of all the evidence; the jury found the defendant not guilty upon indictment 15,772; and the jury convicted the defendant upon the first count in indictment 15,773, *i.e.,* the count charging a conspiracy to damage the real property of the Jefferson Standard Broadcasting Company. The defendant appealed to this Court from the judgment pronounced against him on the verdict upon the last mentioned count, and won a reversal here solely on the ground that there was a fatal variance between the allegations of that count and the proof. This Court said: "There is a fatal variance between the indictment and the proof on this record. The indictment charges the defendants with conspiring to maliciously commit damage and injury to and upon the real property of the Jefferson Standard Broadcasting Company. The proof is to the effect that they conspired to maliciously commit damage and injury to the property of the Duke Power Company . . . The question of variance in a criminal action may be raised by motion for judgment as of nonsuit, or by demurrer to the evidence . . . The motion for judgment as of nonsuit should have been allowed with leave to the Solicitor to secure another bill of indictment, if so advised." See: *S. v. Hicks, ante,* 31, 62 S.E. 2d 497. After the decision of this Court in the former action was certified to the Superior Court, the present indictment was returned by the grand jury.

Before pleading to the present indictment, the defendant filed a plea of former acquittal, setting forth indictments 15,772 and 15,773 and the present indictment and the result of the former trial, and concluding from these matters that the crimes described in the present indictment are identical with those charged against him in indictments 15,772 and 15,773 and that by reason thereof his acquittal upon those indictments constitutes a bar to the present prosecution. The defendant tendered these two issues: (1) Has the defendant been formerly acquitted of the charge contained in the first count of the present bill of indictment? (2) Has the defendant been formerly acquitted of the charge contained in the second count of the present bill of indictment? He prayed the court to submit the issues to the jury before the submission of the general issue of guilt, and to allow him to offer evidence before the jury on the trial

of the issues to establish the identity of the two counts in the present indictment with the offenses charged in the previous indictments.   Judge Clement "refused to submit to the jury the two issues tendered by the defendant . . ., and . . . held, as a matter of law, that there was no former acquittal or former jeopardy involved in this case."   The defendant reserved exceptions to the rejection of his plea of former acquittal, and pleaded not guilty to the indictment.

The action was then tried on the merits before a petit jury.

The case made out by the State's testimony is summarized in the next two paragraphs.

The Jefferson Standard Broadcasting Company operates Radio Station WBT, which has offices in the City of Charlotte and a transmission station in a rural section of Mecklenburg County.   The transmission station is located on a 19 acre tract owned by the Broadcasting Company, and is operated by means of electric power transmitted to it by the Duke Power Company through a transformer substation situated on the same land at a distance of 730 feet from the transmission station.   The transformer substation is maintained and operated by the Duke Power Company, which placed it upon the 19 acre tract under a written contract binding the Jefferson Standard Broadcasting Company and specifying that the four transformers are the property of the Duke Power Company.

The defendant, a resident of Charlotte and a discharged employee of the Jefferson Standard Broadcasting Company, made several statements prior to 12 January, 1950, indicating that he entertained ill will for the Broadcasting Company and desired to put Radio Station WBT out of business.   On the late afternoon of that day, he and Chesley Morgan Lovell made an agreement at Jimmy's Cafe near Columbia, South Carolina, whereby Lovell agreed to "blow up the transformers" at the transformer substation situated on the 19 acre tract and whereby defendant agreed to pay Lovell $250.00 for so doing.   Seven days later the defendant caused a supply of dynamite to be concealed behind a signboard near Jimmy's Cafe, and notified Lovell of that fact by telephone.   Lovell took the dynamite into his possession and carried it from South Carolina to Mecklenburg County, North Carolina, where he entered upon the 19 acre tract under cover of darkness on the night of 21 January, 1950, for the purpose of dynamiting the transformers pursuant to his agreement with the defendant.   He was apprehended by peace officers with the dynamite as he approached the transformers, and for that reason was unable to accomplish his object.

The defendant offered evidence tending to show that he was not acquainted with Lovell and did not conspire with him or any other person to do any injury to the property of the Jefferson Standard Broadcasting Company, the Duke Power Company, or any other person.

The jury found the defendant "guilty on both counts set forth in the bill of indictment." The judge decreed that he should be imprisoned as a misdemeanant for two years on each count, but stipulated that the two sentences should run concurrently.

The defendant excepted and appealed, assigning as error the rejection of his plea of former acquittal, the refusal of his motions for compulsory nonsuits, various rulings in respect to evidential matters, and numerous portions of the charge.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Ralph V. Kidd and J. C. Sedberry for the defendant, appellant.*

ERVIN, J. It is an ancient and basic principle of criminal jurisprudence that no one shall be twice put in jeopardy for the same offense. *S. v. Mansfield,* 207 N.C. 233, 176 S.E. 761. Several criteria have been prescribed by the authorities for determining in diverse situations whether two indictments are for the same offense. The one applicable on the present record is the "same-evidence test," which is somewhat alternative in character. It is simply this: Whether the facts alleged in the second indictment, if given in evidence, would have sustained a conviction under the first indictment (*S. v. Freeman,* 162 N.C. 594, 77 S.E. 780, 45 L.R.A. (N.S.) 977; *S. v. Hooker,* 145 N.C. 581, 59 S.E. 866; *S. v. Hankins,* 136 N.C. 621, 48 S.E. 593; *S. v. Nash,* 86 N.C. 650, 41 Am. Rep. 472; *S. v. Revels,* 44 N.C. 200; *S. v. Birmingham,* 44 N.C. 120; *S. v. Jesse,* 20 N.C. 95), or whether the same evidence would support a conviction in each case. *S. v. Clemmons,* 207 N.C. 276, 176 S.E. 760; *S. v. Bell,* 205 N.C. 225, 171 S.E. 50. See, also, in this connection: 22 C.J.S., Criminal Law, section 279.

Whether the facts alleged in the second indictment, if given in evidence, would have sustained a conviction under the first is always to be determined by the court from an inspection of the two indictments. *S. v. Nash, supra.* Whether the same evidence would support a conviction in each case is to be determined by a jury from extrinsic testimony if the plea of former jeopardy avers facts *dehors* the record showing the identity of the offense charged in the first with that set forth in the last indictment. *S. v. Bell, supra.*

When these rules are laid alongside the case at bar, it is clear that the judge rightly refused to submit to the jury the two specific issues tendered by the defendant and rightly rejected the plea of former acquittal. The plea merely set forth the several indictments and the result of the former trial, and drew the legal conclusion from these bare matters that the defendant was being twice put in jeopardy for the same offense. It did

not aver any facts *dehors* the record showing the identity of the crimes charged in the former indictments with those described in the present one. These things being true, the plea was insufficient, for it revealed on its face the nonidentity of the several offenses. The defendant's legal standing would not be bettered a whit, however, on this phase of the case if his plea of former acquittal had gone beyond the record and invoked the extrinsic testimony. This is so because evidence of a conspiracy to damage or injure property owned or used by the Duke Power Company will not support a conviction of a conspiracy to damage or injure property owned or used by the Jefferson Standard Broadcasting Company. *S. v. Hicks, supra; S. v. Crisp,* 188 N.C. 799, 125 S.E. 543.

This brings us to the question whether the trial judge erred in refusing to dismiss the prosecution on compulsory nonsuits under G.S. 15-173.

The defendant was not entitled to have the action nonsuited on the theory that the crime alleged was committed outside the State. While the conspiracy was formed in South Carolina, one of the conspirators, namely, Chesley Morgan Lovell, committed overt acts in Mecklenburg County, North Carolina, in furtherance of the common design. As a consequence, the Superior Court of Mecklenburg County had jurisdiction to try the action. *S. v. Davis,* 203 N.C. 13, 164 S.E. 737; 22 C.J.S., Criminal Law, section 136. In legal contemplation, a criminal conspiracy is continued and renewed as to all its members wherever and whenever any member of the conspiracy acts in furtherance of the common design. 11 Am. Jur., Conspiracy, section 23.

The defendant advances this additional argument in support of his contention that the trial court erred in refusing to nonsuit the action: The four transformers had been converted into realty by annexation to the land, and by reason thereof belonged to the Jefferson Standard Broadcasting Company. Hence, there was a fatal variance between the indictment charging a conspiracy to damage or injure the property of the Duke Power Company, and the proof showing a conspiracy to damage or injure the realty of the Jefferson Standard Broadcasting Company.

This position is untenable. The transformers were not physically annexed to the land. *S. v. Martin,* 141 N.C. 832, 53 S.E. 874. Moreover, they were placed on the land under a contract with the landowner specifying that they should remain the property of the Duke Power Company. Consequently, the transformers retained the character of personalty. *R. R. v. Deal,* 90 N.C. 110; *Feimster v. Johnson,* 64 N.C. 259. It necessarily follows that the testimony of the State was sufficient to carry the case to the jury and to support the verdict on the second count, *i.e.,* the count charging a criminal conspiracy to injure the personal property of the Duke Power Company.

There was no evidence at the trial, however, to sustain the verdict on the first count, *i.e.*, the count charging a criminal conspiracy to commit damage and injury upon the real property of the Duke Power Company. Nevertheless, the erroneous submission of the first count to the jury is unavailing to defendant unless he shows error affecting the second count. This is true because the jury convicted the defendant on both counts, and the court imposed upon him equal sentences running concurrently on both counts. *S. v. Merritt*, 231 N.C. 59, 55 S.E. 2d 804; *S. v. Warren*, 227 N.C. 380, 42 S.E. 2d 350.

A painstaking examination of the remaining exceptions discloses no prejudicial error affecting the second count.

The testimony of the State's chief witness, Chesley Morgan Lovell, that he was serving a sentence for complicity in the affair under investigation was competent to forestall a contention on the part of the defense that he was testifying for the prosecution to obtain personal immunity. The testimony of the State's witness, Frank Turbeyville, a soldier, that he appeared as a witness at the trial in obedience to orders of his military superior was admissible to counteract the imputation made by the defense on his cross-examination that he was there in the capacity of a hired witness.

The prosecution laid a proper foundation for the introduction of Lovell's evidence as to the telephone conversation in which he was informed of the concealment of the dynamite behind the signboard near Jimmy's Cafe. Lovell had heard the defendant talk, and expressed the opinion that the voice heard on the telephone was that of the defendant. Stansbury: North Carolina Evidence, section 129; *U. S. v. Easterday*, 57 F. 2d 165. Any lack of assurance on Lovell's part as to the identity of the speaker went to the weight of the evidence and not to its admissibility. Stansbury: North Carolina Evidence, section 96. Moreover, the telephone conversation contained internal evidence that the person at the other end of the line was a party to the criminal conspiracy formed a week before. *S. v. Strickland*, 229 N.C. 201, 49 S.E. 2d 469. It was proper for the State to introduce in evidence the dynamite which Lovell found at the signboard immediately after the telephone conversation and had in his possession at the time of his apprehension. The testimony indicated that the dynamite was provided by the defendant to enable Lovell to consummate the conspiracy. 22 C.J.S., Criminal Law, section 712. It is not perceived how the defendant suffered any prejudice through the unsuccessful effort of the Solicitor to have the witness Lovell identify the dynamite caps. *S. v. Coffey*, 210 N.C. 561, 187 S.E. 754. These articles were not received in evidence.

Since the testimony for the prosecution tended to establish that the ultimate object of the conspiracy was to silence Radio Station WBT, the

court rightly received the evidence of the State's witnesses, Fletcher Austin, James B. Patterson, and Alonzo G. Squires, as to antecedent threats of the defendant to injure the Jefferson Standard Broadcasting Company, the owner of the radio station. The same observation applies to the expressions of hostility for the Broadcasting Company contained in the handbill distributed by the defendant and the letter written by him. The threats and expressions of ill will were admissible to show intent and motive. Stansbury: North Carolina Evidence, section 83.

The Solicitor did not transgress legal proprieties in undertaking to impeach the defendant as a witness by cross-examining him as to antecedent acts of misconduct. *S. v. King,* 224 N.C. 329, 30 S.E. 2d 230.

The trial judge did not err in his instructions to the jury. When the charge is read contextually, it is manifest that the court instructed the jury accurately on the law of the case, summed up the evidence of the witnesses correctly, and stated the contentions of the prosecution and defense fairly.

For the reasons given, there is in a legal sense

No error.