STATE OF NORTH CAROLINA v. MARVIN EDWARD BALLARD

No. 56

(Filed 9 February 1972)

**1. Constitutional Law § 34; Criminal Law § 26— double jeopardy**
    The fundamental principle that no person can be twice put in jeopardy of life or limb for the same offense comes within the purview of the "law of the land" clause of Art. I, Sec. 17 of the N. C. Constitution.

State v. Ballard

**2. Constitutional Law § 34; Criminal Law § 26— double jeopardy**

The double-jeopardy clause of the Fifth Amendment to the U. S. Constitution is applicable to the states through the Fourteenth Amendment.

**3. Criminal Law § 110— nonsuit — not guilty verdict**

Whether correct or erroneous, a judgment of nonsuit in an armed robbery prosecution had the force and effect of a verdict of "not guilty" as to the armed robbery for which defendant was then being tried. G.S. 15-173.

**4. Criminal Law § 26— when jeopardy attaches**

Jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) on a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn to make true deliverance in the case.

**5. Robbery § 4— armed robbery — property taken — variance between indictment and proof**

In an armed robbery prosecution, variance between the allegations of the indictment and the proof in respect of the property taken is not material.

**6. Robbery § 2— armed robbery — indictment — ownership of property taken**

In an indictment for armed robbery the allegation of ownership of the property taken is sufficient when it negatives the idea that the accused was taking his own property.

**7. Robbery § 1— gravamen of armed robbery**

The gravamen of the offense of armed robbery is the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons in the perpetration of or even in the attempt to perpetrate the crime of robbery.

**8. Criminal Law § 26— double jeopardy — same evidence test**

A plea of former jeopardy bars a second prosecution when the facts alleged in the second indictment, if given in evidence, would have sustained a conviction under the first indictment, or when the same evidence would support a conviction in each case.

**9. Criminal Law § 26— armed robbery of A & P store — named employee — different employees named in second indictment — double jeopardy**

Judgment of nonsuit on the ground of variance was entered in defendant's trial upon an indictment charging armed robbery of an A & P store in which the life of a named employee of the store was endangered and threatened and in which money belonging to the store was taken "from the person" of the named employee. Defendant was subsequently prosecuted upon another armed robbery indictment for the same occurrence which alleged that the lives of two other employees were endangered and threatened and that the money was taken "from the presence and person" of the two other employees.

The evidence in both trials showed that the robbery was perpetrated by endangering and threatening all employees then present in the store, including those named in both indictments, but that the money was removed from the immediate presence of the two employees named in the second indictment. *Held:* The same evidence would support a conviction in both trials, and defendant's plea of former jeopardy prior to his second trial should have been allowed.

10. **Robbery § 4— armed robbery of store — money taken from presence of all employees**

The fact that one employee of a store happened to be farther from the store's money than two other employees when it was taken into possession by robbers does not negate the fact that the money was taken from the presence of that employee and all other employees then on duty in the store.

11. **Robbery § 2— armed robbery of store — allegation of "from the person" — taking "from the presence"**

An allegation charging robbery "from the person" of a store employee includes a taking of the employer's property from the presence of the employee.

Justices LAKE, BRANCH and HUSKINS dissent.

APPEAL by Marvin Edward Ballard from *Bailey, J.,* January 4, 1971 Criminal Session of CUMBERLAND Superior Court, transferred for initial appellate review by the Supreme Court under its general order of July 31, 1970, entered pursuant to G.S. 7A-31 (b) (4), docketed and argued as No. 32 at Fall Term 1971.

An indictment returned at the January 4, 1971 Session of Cumberland Superior Court charged that, on August 21, 1970, Marvin Edward Ballard (Ballard) "unlawfully, wilfully, and feloniously having in his possession and with the use and threatened use of firearms, and other dangerous weapons, implements, and means, to wit: *a pistol,* whereby the *lives of Pat Britt and Nolan Smith were* endangered and threatened did then and there unlawfully, wilfully, forcibly, violently and feloniously take, steal, and carry away One Thousand, Five Hundred and One Dollars and Seventeen Cents ($1,501.17) in money to wit: United States Currency and Coins of the value of One Thousand, Five Hundred and One Dollars and Seventeen Cents ($1,501.17) *from the presence and person of Pat Britt and Nolan Smith* property of the Great Atlantic and Pacific Tea Company, Incorporated, . . . . " (Our italics.)

When arraigned on said indictment, Ballard moved to dismiss, basing his motion upon a plea of former jeopardy. The

court denied the motion and Ballard excepted. Thereupon, Ballard pleaded not guilty.

The indictment against Ballard and an indictment against Virgil Lee Gaines, which contained identical charges, were consolidated for trial and tried before Judge Bailey during the third week of the January 4, 1971 Session. At the conclusion of the State's evidence, the court granted the motion of Gaines for judgment as in case of nonsuit. Thereafter Ballard testified and offered evidence. As to Ballard, the jury returned a verdict of "Guilty as Charged," and judgment imposing a prison sentence of not less than sixteen years nor more than twenty years was pronounced. Ballard excepted and appealed.

*Attorney General Morgan and Assistant Attorney General Weathers for the State.*

*William S. Geimer, Assistant Public Defender, for defendant appellant.*

BOBBITT, Chief Justice.

[1] "It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense. *S. v. Prince,* 63 N.C. 529, *S. v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871. It was incorporated in the Bill of Rights of the Federal Constitution. (United States Constitution, Amendment V.) While the principle is not stated in express terms in the North Carolina Constitution, it has been regarded as an integral part of the 'law of the land' within the meaning of Art. I, sec. 17. *S. v. Mansfield,* 207 N.C. 233, 176 S.E. 761." *State v. Crocker,* 239 N.C. 446, 449, 80 S.E. 2d 243, 245 (1954).

[2] Overruling prior decisions, the Supreme Court of the United States held in *Benton v. Maryland,* 395 U.S. 784, 23 L.Ed. 2d 707, 89 S.Ct. 2056 (1969), that the double-jeopardy clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment. Hence, federal as well as state double-jeopardy standards control decision.

Ballard's plea of double jeopardy is based on his trial before Judge McKinnon at December 7, 1970 Criminal Session of Cumberland Superior Court on an indictment returned at the October 12, 1970 Criminal Session which charged that, on

August 21, 1970, he "unlawfully, wilfully and feloniously, having in his possession and with the use and threatened use of firearms, and other dangerous weapons, implements, and means, to wit: *a .38 caliber pistol* whereby the *life of Kane Parsons was* endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, steal and carry away One Thousand, Five Hundred and One Dollars and Seventeen Cents ($1,501.17) in money, to wit: United States Currency and Coins of the value of One Thousand, Five Hundred and One Dollars and Seventeen Cents ($1,501.17) from the *person of Kane Parsons* property of the Great Atlantic and Pacific Tea Company, Incorporated, . . . . " (Our italics.)

An "Addendum to the Record" provides the only information before us as to what occurred at the trial at December 7, 1970 Criminal Session. This discloses that, upon Ballard's plea of not guilty to the above quoted indictment, the jury was duly selected, sworn and empaneled; that Ballard made a motion to dismiss as in case of nonsuit at the end of the State's evidence and again at the end of all the evidence but assigned no ground and presented no argument in support of the motions; that each of Ballard's motions was overruled; that later the court allowed Ballard's motion to dismiss as in case of nonsuit and stated the reasons therefor as follows:

"After the argument and at the beginning of the charge, the court for the first time read the Bill of Indictment and determined that it alleged that Kane Parsons was endangered and threatened and further it alleged the taking and carrying away of money from the person of Kane Parsons. Upon examination of the Bill of Indictment, the court being of the opinion that there is a fatal variance between the allegation and the proof, it is ordered that the defendant's motion for judgment as of nonsuit be allowed, with leave to the State to proceed upon a correct charge and Bill of Indictment. The defendant is to be held in lieu of Bail in the amount of five thousand dollars ($5000.00) pending the drawing of a new charge."

[3] Whether correct or erroneous, the judgment of nonsuit had the force and effect of a verdict of "not guilty" as to the armed robbery for which Ballard was then being tried, namely, the armed robbery charged in the indictment returned at the October 12, 1970 Criminal Session. G.S. 15-173; *State v. Stinson*, 263 N.C. 283, 286, 139 S.E. 2d 558, 561 (1965).

The question is whether this second prosecution of Ballard for the armed robbery allegedly committed by him in the A & P store on August 21, 1970, violates his constitutional guarantee against double jeopardy.

[4] "[J]eopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) On a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn to make true deliverance in the case." *State v. Bell,* 205 N.C. 225, 228, 171 S.E. 50, 52 (1933); *State v. Crocker, supra* at 449, 80 S.E. 2d at 245; *State v. Birckhead,* 256 N.C. 494, 504, 124 S.E. 2d 838, 846 (1962).

Unquestionably, at December 7, 1970 Criminal Session, jeopardy attached in respect of the crime charged in the indictment returned at October 12, 1970 Criminal Session. The judgment of nonsuit barred further prosecution *for that crime.*

Both indictments are based on G.S. 14-87 which, in pertinent part, provides: "Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony . . . . "

The indictments returned at October 12, 1970 Criminal Session and at January 4, 1971 Criminal Session are identical except the italicized portions thereof. Each indictment charged all elements of the crime of armed robbery as defined in G.S. 14-87. Each charged the crime was committed on August 21, 1970, and involved the theft of $1,501.17 of the money of the Great Atlantic and Pacific Tea Company, Incorporated. The indictment returned at October 12, 1970 Criminal Session charged that the "life of Kane Parsons was endangered and threatened," and that the $1,501.17 was taken from the "person of Kane Parsons." The indictment returned at January 4, 1971 Session charged that the "lives of Pat Britt and Nolan Smith

were endangered and threatened," and that the $1,501.17 was taken "from the presence and person of Pat Britt and Nolan Smith."

[5-7] In respect of "armed robbery" as defined in G.S. 14-87, "[f]orce or intimidation occasioned by the use or threatened use of firearms, is the main element of the offense." *State v. Mull,* 224 N.C. 574, 576, 31 S.E. 2d 764, 765 (1944). Accord: *State v. Sawyer,* 224 N.C. 61, 65, 29 S.E. 2d 34, 37 (1944) ; *State v. Lynch,* 266 N.C. 584, 586, 146 S.E. 2d 677, 679 (1966). Variance between the allegations of the indictment and the proof in respect of the ownership of the property taken is not material. *State v. Rogers,* 273 N.C. 208, 212-13, 159 S.E. 2d 525, 528-29 (1968). "[I]n an indictment for robbery the allegation of ownership of the property taken is sufficient when it negatives the idea that the accused was taking his own property." *State v. Sawyer, supra* at 65-66, 29 S.E. 2d at 37. The gravamen of the offense is the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons in the perpetration of or even in the attempt to perpetrate the crime of robbery.

[8] The double-jeopardy test applicable on the present record is the "same-evidence test," which is alternative in character. This test is defined in *State v. Hicks,* 233 N.C. 511, 516, 64 S.E. 2d 871, 875 (1951), in opinion by Justice Ervin, as follows: "Whether the facts alleged in the second indictment, if given in evidence, would have sustained a conviction under the first indictment [citations], or whether the same evidence would support a conviction in each case. [Citations.]"

In the present case, the first alternative does not apply. Evidence sufficient to prove only *the facts alleged in the second indictment* would not have sustained a conviction under the first indictment. No fact concerning Kane Parsons was alleged in the second indictment.

The second alternative, whether *the same evidence* would support a conviction in each case, is the determinative test in the present case. Application of this test requires a review of the evidence offered at Ballard's trial on the second indictment.

The State's evidence, which consists of the testimony of five witnesses, is summarized below.

James Richard Strickland: On August 21, 1970, Strickland was an employee of the Ramsey Street A & P, and he observed defendants Marvin Ballard and Virgil Gaines, and a third man, "at the door for about five seconds." He "then turned back to do the work he was doing." Someone said "freeze." Strickland turned around and saw "Gaines standing at his side with a gun up in the air at a distance of about two feet." He "looked toward the office and saw a man up there with a gun pointed down in the office." That man was Marvin Ballard. Someone said, "Hurry up, chunk," Ballard got "the money out of the office." He told everyone to get on the floor, and Strickland complied. Ballard proceeded outside to a waiting car. The entire incident lasted "four or five minutes."

Nolan B. Smith: About 8:55 p.m. Smith and Mrs. Patricia Britt, fellow employees of the A & P, "had just finished counting the till." Smith "heard a voice say 'freeze,' and saw something move at a side window of the office inside which he was standing." "[Smith's] office was a raised area located at the opposite end of the line of cash registers from the one that has been referred to as the first cash register." Marvin Ballard was standing 3½ feet from him with a gun in his hand. Ballard first said, "Let me have it," and then, "Hurry up, I mean business, let me have the money." Smith stood there and Mrs. Britt "started getting the money together, someone brought a paper bag to her and she put money in the bag," amounting to approximately $175.00. Smith did not see Mrs. Britt actually give Ballard the money. He observed Ballard for a period of 20 to 30 seconds altogether. He looked in "the direction of the meat department and the produce department and saw another individual in that vicinity with a weapon." Smith was "looking around over the store when he heard someone say 'everybody hit the floor.'" When he heard this, he fell to the floor. The entire incident lasted "no more than three or four minutes."

Mrs. Patricia Britt: As "head cashier," Mrs. Britt had just "finished checking Mr. Smith's till for the day" when she saw Ballard. She had "about $1500 in the area." "Ballard had a gun in his hand and said, 'Give me the money.'" "[A] paper bag was handed to" Mrs. Britt and she put the money in it. She did not remember "who hollered for a bag." "[E]ither she or Nolan Smith" gave the bag over to Ballard. Mrs. Britt did not know

whether she was the one who gave Ballard the bag. She hit the floor upon the command to do so.

John William Gooding: "[T]hree colored males" entered the store together. Ballard went to the office window, located "about 35 feet" from the "first check-out register" where Gooding was bagging groceries for a customer, "the farthest [counter] down from the office." Ballard pulled a gun and laid it on the window ledge, pointing it toward the office. Another of of the three came near Gooding and said, "Everybody freeze," pulling a pistol from under his shirt. This man was "in the vicinity of Richard Strickland, also, about 3 or 4 feet from him." "Someone" brought Ballard a paper bag. Gooding "did not actually hear [Ballard] ask for money." Gooding had a "side angle view" of Ballard, and observed him for "30 or 40 seconds." At some point Ballard turned and pointed his gun at Carl Brigman, another employee of the store. Someone yelled, "Hurry up, chunk." With that, Ballard "hurried and got out of the store and said, 'Everybody on the floor,'" with which command Gooding complied.

Kane Parsons: Ballard and two others entered the store and split up. Ballard came toward the "check-out counter, which is fartherest from the office," where Parsons, an employee of the A & P, was standing. Parsons's attention was diverted to another individual who was standing "right beside" Strickland. Parsons was able to observe Ballard "for not over 12 to 15 seconds." Ballard approached within 20 or 30 feet of Parsons. Parsons never saw Ballard "in the area of the office" and "never saw Ballard pull a pistol." "[I]t was approximately half a minute from the time [Parsons] observed the people coming in the door until he hit the floor."

Evidence offered by Ballard, which consisted of his own testimony and that of Leslie Scott, tended to establish an alibi.

As indicated, Ballard defended on the ground he was not involved in *any* alleged robbery of the A & P store on August 21, 1970, without regard to the identity of the employees present on such an occasion. Although nonsuit was granted on the ground of variance, it was a determination of not guilty in respect of the robbery of the A & P store on August 21, 1970, if Kane Parsons was one of several A & P employees whose lives were endangered and threatened by Ballard in the perpetration of the robbery.

The present record does not contain the testimony before the jury at the first trial. It does contain the testimony before Judge McKinnon at a *voir dire* hearing to determine the admissibility of identification testimony. This was, by stipulation, used in the trial before Judge Bailey in lieu of conducting a new *voir dire* hearing. Witnesses at the *voir dire* hearing before Judge McKinnon included James Richard Strickland, Nolan B. Smith, Mrs. Patricia Britt, John William Gooding and Kane Parsons. Their testimony was substantially the same as their testimony before the jury in the trial before Judge Bailey.

[9]   Clearly, both indictments and the evidence at both trials relate to what occurred on the same occasion, namely, the robbery of the A & P store on August 21, 1970, allegedly by defendant and two others, perpetrated by endangering and threatening the lives of all employees then present. The evidence, on which Ballard was convicted at the second trial, tended to show that Ballard was one of three men who entered the store about 8:55 p.m. on August 21, 1970; that Ballard and one of his confederates were armed with and displayed pistols; that, in the perpetration of their crime, the robbers commanded all employees to "freeze" and for everybody to "hit the floor," which commands were promptly obeyed; that the employees in the store who heard and obeyed these commands included Pat Britt, Nolan Smith and Kane Parsons; that, although the money was removed from the immediate presence of Pat Britt and Nolan Smith, all employees in the store were confronted by the robbers and had responsibility for the custody and care of the employer's money; and that the life of each was threatened and would have been further endangered if any one or more of these employees had offered resistance to the armed robbers. We have concluded that this evidence was sufficient to have sustained the conviction of Ballard at the first trial and that the termination thereof in his favor supports his plea of double jeopardy.

[10, 11]   The duty of Kane Parsons to his employer would have required him to intervene to protect the property if he could have done so without further endangering his life. (Kane Parsons testified on *voir dire* that he was the assistant manager of this A & P store.) The fact that he happened to be farther from the property than Pat Britt and Nolan Smith when it was actually taken into possession by the robbers does not negate the fact it was taken from the presence of Parsons and all other

employees then on duty in the store. The first indictment charged the robbery was "from the person" of Kane Parsons. However, the phrase "from the person" included a taking (of his employer's property) from the presence of Kane Parsons. Decisions in accord include those reviewed below.

In *Austin v. State,* 419 P. 2d 569 (Okl. Cr. 1966), the indictment charged robbery "from the possession and person" but the evidence indicated that the defendant removed money from a cash register unaided by the victim; the court found no material variance. In *Baugh v. State,* 211 Ga. 863, 89 S.E. 2d 504 (1955), variance between an indictment charging robbery "from the person" and evidence showing the money was taken from a drawer in the victim's bedroom was not deemed fatal. The same result obtained in *State v. Williams,* 183 S.W. 308 (Mo. 1916), in which the information charged robbery "from his person, in his presence," but it appeared that the victim was shot and lying in an adjoining room unable to see the defendant rifling the cash drawer. In *State v. Calhoun,* 72 Iowa 432, 34 N.W. 194, 2 Am. St. Rep. 252 (1887), although the Iowa robbery statute required the taking of property "from the person" of another, and the evidence showed the taking took place in a room of the house different from that in which the putting in fear occurred, conviction was affirmed.

In *Wright v. State,* 468 S.W. 2d 422 (Tex. Cr. 1971), the indictment charged robbery by assault on Josephine Meyer, and the defendant received a life sentence. Meyer's testimony, however, showed that Wolfe was the person counting the money when the robbers appeared and that Wolfe was the A & P store manager. The court said: "As we view the facts, they do not show such exclusive care, control and management in Wolfe so as to render an allegation in Mrs. Meyer fatal to conviction . . . . The fact that the money was taken from Mrs. Meyer's possession rather than from her person would not call for a contrary result. Further, . . . any possession of the victim which is superior to that of the robber is sufficient ownership or possession to be subject to robbery . . . . " *Id.* at 424.

In *Carreon v. State,* 90 Tex. Cr. 572, 236 S.W. 985 (1922), the indictment charged the robbery of Darbyshire, though the evidence tended to show that the money was taken from the more immediate presence of Nold. Both Darbyshire and Nold were officers in the same company. The court held that, since

State v. Ballard

the two had "joint possession," either could appropriately be named in the indictment as victim.

Although decision herein is based on the legal principle stated in *State v. Hicks, supra,* namely, that the plea of double jeopardy bars a second prosecution when the same evidence would have supported a conviction at the first trial, we are advertent to the holding of the Supreme Court of the United States that the principle of collateral estoppel, or *res judicata,* inheres in the Fifth Amendment's ban against subjecting any person "to be twice put in jeopardy." *Ashe v. Swenson,* 397 U.S. 436, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970). For present purposes, it is unnecessary to define the differences, if any, between double jeopardy and collateral estoppel. Both are based on the concept that essentially the same issue was for determination in each trial.

This case is of first impression in this jurisdiction involving a factual situation in which several employees of a store or other place of business are confronted by armed robbers and the life of each employee is endangered and threatened. Decision on this appeal is that the judgment of nonsuit for variance was improvidently entered. Since it protects Ballard from the second prosecution, it may be that a guilty person will escape punishment. Even so, to hold otherwise would be to adopt a rule whereby failure to allege in the indictment the name or names of the employee or employees who were *nearest* the money or *most* threatened and endangered would necessitate nonsuit.

For the reasons stated, the judgment of the court below is arrested; and, unless confined on account of other charges, Ballard is entitled to his discharge.

Reversed.

Justices LAKE, BRANCH and HUSKINS dissent.