STATE OF NORTH CAROLINA v. ALLEN LASSITER

No. 7214SC766

(Filed 20 December 1972)

1. **Criminal Law § 89— witness's involvement in other robberies — inquiry for impeachment purposes**

    The trial court in an armed robbery prosecution properly allowed the solicitor to question one of the defendant's witnesses as to whether he had been involved in armed robberies in the City of Durham at certain times in order to impeach the witness's credibility.

2. **Criminal Law § 34— commission of another robbery by defendant — admissibility to show identity**

    Testimony by one witness that defendant had committed a robbery with that witness subsequent to the robbery with which defendant was charged was competent as proof of the identity of defendant and was properly admitted.

APPEAL by defendant from *Cooper, Judge,* 10 April 1972 Session of Superior Court held in DURHAM County.

Defendant was charged in a bill of indictment, proper in form, with the felony of armed robbery of United States currency of the value of two hundred and eighty dollars ($280.00) from the presence, person and place of business of Worth Goodwin, Goodwin Grocery, Highway 54, Durham. Defendant pleaded not guilty.

The evidence for the State tended to show that Worth Goodwin and his wife, Mary Goodwin, operated a grocery store known as "Goodwin Grocery Gas and Grill" located on Highway 54 outside the City of Durham. On 13 January 1972, at about 7:30 p.m., Mr. Goodwin and Mrs. Goodwin were in the store cleaning the grill area. Their daughter was watching the grocery portion of the store for customers. Sometime between 7:30 and 7:45 p.m., two black males entered the grocery part of the store, and Mr. Goodwin's daughter went to him and told him he had customers. Mr. Goodwin went into the grocery area, which was well-lighted, and asked the two men if he could help them. One of the men asked for some "Pall Mall's," but when Goodwin reached for them, the man (later identified as David H. Gilliard) pulled a pistol from his pocket and said, "This is a stickup." The second man (later identified as the defendant) went back to the grill area, pointed a pistol at Mrs. Goodwin and said, "Give me your money, give me your pocket-

book." Mrs. Goodwin put her hands in the air and said she had no money. At the same time, the young Goodwin girl went into the adjoining house and telephoned the sheriff's department. While the defendant was holding his gun on Mrs. Goodwin, Gilliard ordered Mr. Goodwin to open his cash register. When Goodwin refused, Gilliard hit him in the mouth; whereupon, Goodwin stepped back and in doing so, opened the hand-operated cash register. Gilliard told Goodwin to lie face down, but Goodwin lay on his back in order to protect some money he had in his wallet in his rear pants pocket. The defendant left Mrs. Goodwin and went to where Goodwin and Gilliard were located. After putting his gun in his pocket, the defendant reached into Goodwin's cash register drawer and took from it two hundred and eighty dollars ($280.00) in cash. Defendant then told Gilliard to shoot Mr. Goodwin. Gilliard went over to Mr. Goodwin, said "Boy" and shot him. The defendant and Gilliard ran off, and Goodwin, who was not seriously wounded, got his revolver and chased them a short distance exchanging shots with them until he gave out of ammunition.

The defendant offered in evidence the testimony of David H. Gilliard and George Husketh. Gilliard testified that he had been convicted of participating in the crime the defendant was charged with in the case at bar, but that the second participant in the crime was not the defendant; rather, it was a man named "LeRoy" whose last name or address he did not know. George Husketh testified that he was a friend of the defendant's; that he was with the defendant on 13 January 1972 from about 5:30 p.m. until 10:00 p.m.; that during that time he and the defendant visited "Elvira's Blue Dinette," "Papa Jack's," and two "bootleg houses"; that a man named "Bubba" served drinks to the defendant and Husketh at a "bootleg house" in the Logan Building; and that a man named "Sam" saw the defendant and Husketh at a "bootleg house" on Mount Vernon Street. The defendant did not testify.

The State offered the testimony of Roger Inges in rebuttal. Inges testified that he was also known as "Bubba"; that he knew Allen Lassiter, the defendant; that he "gives parties" at 418 East Pettigrew Street; that he saw the defendant and George Husketh at his place about once a week; and that on 13 January 1972, he did not see the defendant or George Husketh because he was in Philadelphia at the time.

The defendant offered the testimony of Elvira Watson in rebuttal. She testified that she operated a place of business known at Elvira's Blue Dinette and that the defendant and George Husketh went to her place of business often.

At the close of all the evidence, defendant made a motion for nonsuit which was denied. The jury returned a verdict of guilty of armed robbery and judgment of the court was pronounced thereon that defendant be imprisoned for a term of 15 years. The defendant appealed to the Court of Appeals, assigning error.

*Attorney General Morgan and Associate Attorney Haskell for the State.*

*Felix B. Clayton for defendant appellant.*

MALLARD, Chief Judge.

Defendant's assignment of error numbered 1 is directed to the court's denial of his motion for nonsuit at the close of all the evidence. Defendant contends that "the evidence is insufficient to place him at the scene on the date in question." We hold that viewed in the light most favorable to the State, there was sufficient evidence to identify the defendant as the perpetrator of the robbery in issue and sufficient evidence of all the material elements constituting armed robbery to require submission of the case to the jury. *State v. Hoffman,* 281 N.C. 727, 190 S.E. 2d 842 (1972) ; *State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634 (1971) ; *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969). "It is noted that all *admitted* evidence is for consideration when passing upon a motion to dismiss as in case of nonsuit. *State v. Walker,* 266 N.C. 269, 272, 145 S.E. 2d 833, 835." *State v. Crump,* 277 N.C. 573, 178 S.E. 2d 366 (1971). See also, *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970), *cert. denied,* 400 U.S. 946. Questions raised by defendant as to the competency of portions of the State's evidence are hereinafter discussed.

[1] Defendant's assignment of error numbered 3 is directed to certain questions asked by the solicitor upon cross-examination of the defendant's witness, David H. Gilliard. Gilliard was permitted to testify, over defendant's objection, that he had committed four or five robberies prior to the one at bar, and that the defendant was involved in a robbery with Gilliard of

Elvira's Blue Dinette on 21 January 1972, eight days subsequent to the robbery for which defendant was being tried. For purposes of impeachment, a witness is subject to cross-examination as to his *convictions* for crime, as well as other *antecedent acts of misconduct. State v. Ernest Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972) ; *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972) ; *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971) ; *State v. Dawson,* 278 N.C. 351, 180 S.E. 2d 140 (1971) ; *State v. Bell,* 249 N.C. 379, 106 S.E. 2d 495 (1959) ; *State v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342 (1955) ; *State v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871 (1951), *cert. denied,* 342 U.S. 831; *State v. King,* 224 N.C. 329, 30 S.E. 2d 230 (1944). We hold that it was proper for the solicitor to question the defendant's witness Gilliard as to whether he had "been involved in" armed robberies in the City of Durham at certain times in order to impeach Gilliard's credibility.

[2]  We are also of the opinion that it was proper for the solicitor to inquire of Gilliard whether the defendant was involved in a robbery with Gilliard eight days after the crime defendant was charged with had been committed. "While it is undoubtedly the rule of law that evidence of a distinct substantive offense is inadmissible to prove another independent crime, this rule is subject to well-established exceptions where the two crimes are disconnected and not related to each other. Proof of the commission of other like offenses to show . . . the identity of the person charged is competent." *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503 (1970), *rev'd. on other grounds,* 403 U.S. 948; see also, *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969) ; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954) ; Stansbury, N. C. Evidence 2d, §§ 91, 92. We hold that the testimony that defendant had committed a robbery with Gilliard subsequent to the one with which he was charged was competent as proof of the identity of defendant and properly admitted. See *State v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352 (1944) ; *State v. Ferrell,* 205 N.C. 640, 172 S.E. 186 (1934).

Defendant's assignment of error numbered 7 is directed to the following questions asked of the defendant's witness George Husketh on cross-examination:

"Q. When did you first know that your friend Allen Lassiter had been charged with robbing the Goodwin Grocery?

OBJECTION.

OVERRULED.

EXCEPTION NO. 26.

I found out about three or four days later.

Q. Three or four days after Elvira's was robbed on January 21, or what?

OBJECTION.

OVERRULED.

EXCEPTION NO. 27.

I don't keep up with the calendar."

Defendant contends that the solicitor's question concerning the robbery of Elvira's Blue Dinette was irrelevant and the court's failure to sustain his objection to the question was prejudicial error. We do not agree. In this instance, the question of the solicitor was for the purpose of clarifying the previous testimony of the witness. Assuming *arguendo* that the question was improper, there was no prejudicial error. The witness's answer to the question, that he did not "keep up with the calendar," was harmless to the defendant's cause. This assignment of error is without merit and is overruled.

We have examined all of defendant's assignments of error properly presented and find no prejudicial error.

No error.

Judges MORRIS and HEDRICK concur.