STATE v. RAMBERT

[116 N.C. App. 89 (1994)]

STATE OF NORTH CAROLINA v. TIASEER JANIL RAMBERT

No. 934SC915

(Filed 16 August 1994)

1. **Assault and Battery § 80 (NCI4th); Constitutional Law § 177 (NCI4th)— three shots fired by defendant—insufficiency of indictment to charge three offenses—three convictions—error**

   The trial court violated defendant's right against double jeopardy by allowing three separate convictions for three separate shots fired by defendant at the victim's vehicle at three different times and at different ranges where the indictments did not specifically allege the factual basis for the separate events of the three shots.

   **Am Jur 2d, Assault and Battery §§ 90, 91; Criminal Law § 277.**

2. **Weapons and Firearms § 24 (NCI4th)— going armed to the terror of the people—insufficiency of indictment to elevate offense to felony**

   The bill of indictment failed to charge defendant with the felony of going armed to the terror of the people, since, for a misdemeanor to be elevated under N.C.G.S. § 14-3(b), the indictment must warn the defendant of a possible elevation to felony status with a specific reference to "infamy," "secrecy and malice," or "deceit and intent to defraud," and the indictment in this case made no such reference.

   **Am Jur 2d, Weapons and Firearms § 29.**

   Judge WYNN concurs in the result only.

Appeal by defendant from judgment entered 29 July 1993 by Judge Anthony M. Brannon in Onslow County Superior Court. Heard in the Court of Appeals 6 June 1994.

Defendant was convicted of three counts of discharging a firearm into occupied property in violation of N.C. Gen. Stat. § 14-34.1, one count of assault with a deadly weapon, in violation of N.C. Gen. Stat. § 14-32(c), and one count of going armed to the terror of the people, in violation of the common law. Defendant was sentenced to three

concurrent terms of seven years for the three convictions for discharging a firearm into occupied property. Defendant was also sentenced to three years for the going armed to the terror of the people conviction, to run concurrently with a two-year sentence for the assault conviction. Defendant gave notice of appeal in open court.

*Attorney General Michael F. Easley, by Assistant Attorney General Sueanna Sumpter, for the State.*

*Jordan and Best, by David L. Best, for defendant-appellant.*

ORR, Judge.

The evidence tended to show that the defendant encountered John Dillahunt at 4:00 p.m. on 25 May 1992 in the parking lot of a store. Mr. Dillahunt was waiting in his car for two friends who were in the store. The defendant was in the back seat, on the passenger side, of a car driven by his cousin. A friend of the defendant's, Rick, was in the front seat of the car. There were other people in the parking lot of the store.

According to the State's evidence, the defendant's car pulled alongside Mr. Dillahunt's car and defendant said: "Talk that shit now." Defendant's statement was a reference to prior confrontations that he had had with Mr. Dillahunt. Mr. Dillahunt then noticed that the defendant was holding a gun and ducked. Defendant shot his gun at Mr. Dillahunt's car. The bullet hit the front windshield of the car and cracked the glass. The bullet did not enter the car, but a hole was made in the windshield. Mr. Dillahunt then drove away from the defendant's car. When he was approximately ten yards away from the defendant's car he heard a second shot, which hit his car in the center of the passenger-side door. Mr. Dillahunt ducked once again after the second shot was fired. He heard a third shot fired from a distance of approximately 20 yards. This bullet hit the rear bumper of his car. Mr. Dillahunt did not see the defendant fire this shot, though he saw the first and second shots fired by the defendant. Neither Mr. Dillahunt nor any of the other persons in the parking lot were injured by the gunshots.

Mr. Dillahunt rapidly drove away from the defendant and proceeded towards downtown Jacksonville. Upon realizing that defendant's car was following him, and that traffic was stopped ahead, Mr. Dillahunt turned into a residential neighborhood, driving at approximately 75-80 miles per hour. Defendant's car continued to follow him.

Mr. Dillahunt heard two more shots fired from the defendant's car during this chase. Mr. Dillahunt found a police officer and asked her assistance. At this point, defendant's car turned around and left.

Mr. Dillahunt went to the police station to give a statement. An evidence technician removed a thirty-eight (.38) caliber bullet from the rear bumper of his car and one of the officers who investigated the crime found a thirty-two (.32) caliber bullet at the crime scene. At the conclusion of the State's evidence, the defendant moved to dismiss the charges against him on the grounds that they subjected him to double jeopardy and accordingly violated the Fifth and Fourteenth Amendments of the United States Constitution.

I.

[1] The double jeopardy objection to the three separate convictions for discharging a firearm into occupied property is the basis for defendant's first assignment of error. We hold that the trial court erred by allowing three separate convictions.

In *State v. Ray*, 97 N.C. App. 621, 389 S.E.2d 422 (1990), Judge Duncan applied the framework for analyzing double jeopardy arguments established in *State v. Hicks*, 233 N.C. 511, 516, 64 S.E.2d 871, 875, *cert. denied*, 342 U.S. 831, 96 L. Ed. 629 (1951), specifically to N.C. Gen. Stat. § 14-34.1. The *Ray* opinion restated the two questions in *Hicks'* double jeopardy analysis:

1) whether the facts alleged in the second indictment if given in evidence would have sustained a conviction under the first indictment, or 2) whether the same evidence would support a conviction in each case.

97 N.C. App. at 623, 389 S.E.2d at 424. *See also State v. Ballard*, 280 N.C. 479, 485, 186 S.E.2d 372, 375 (1972); *State v. Irick*, 291 N.C. 480, 502, 231 S.E.2d 833, 847 (1977).

In *Ray*, the Court applied the *Hicks* test to hold that the defendant's two convictions did not subject him to double jeopardy. The first indictment against the defendant charged that he shot into 3606 Jonquil Street, while the second indictment alleges he shot into 3608 Jonquil Street. The State offered evidence showing that he fired into the two dwellings which were both located in the same apartment building. Applying the first part of the test, this Court reasoned that the evidence offered in support of the second indictment would not have supported a conviction in the first indictment. *Id.* at 624, 389

S.E.2d at 424. Applying the second part of the test, this Court held that the same evidence would not have supported a conviction on both counts. *Id.* Accordingly, defendant was properly convicted of two separate counts of firing into occupied property.

Applying the *Hicks* test to the instant case, we find that the three shots fired by defendant can only support one conviction. The indictments against the defendant were for the three shots he took at Mr. Dillahunt's vehicle at different times and at different ranges. However, the indictments do not allege the specific events of each shot. In fact, the indictments for each shot are identically worded. The first question in the *Hicks* test is whether the evidence for the second or third weapon discharges would sustain a conviction for the first indictment. The second and third shots were fired several moments after the first shot. In addition, they hit Mr. Dillahunt's car in different areas than did the first shot. Nevertheless, the bill of indictment does not distinguish between the shots fired. Accordingly, evidence for the second or third weapon discharge would support a conviction for the first indictment. Applying the second part of the *Hicks* test, the same evidence would support a conviction in each of the three indictments against the defendant. Again, this is because the indictments did not specifically allege the factual basis for the separate events of the first, second and third shots.

We note that had the indictments, under the facts of this case, specifically alleged the factual basis for each of the three shots, each shot could have been treated as grounds for separate convictions. For example, the three indictments could have alleged, respectively, that (1) defendant discharged a handgun into the front windshield of the car; (2) defendant discharged a handgun into the passenger side door of the car as the car was ten yards from where the first shot was fired; and (3) defendant discharged a handgun into the rear bumper of the car as the car was twenty yards from where the first shot was fired. However, because the indictments did not specifically allege the factual basis for each of the three shots, we conclude that the trial court erred in treating each shot as grounds for separate convictions.

II.

[2] Defendant's second assignment of error involves the trial court's finding that the common law offense of going armed to the terror of the people was a felony because it was "infamous" under N.C. Gen. Stat. § 14-3(b). We do not reach the substantive aspect of this assignment of error because the bill of indictment improperly failed to charge the defendant with a felony.

The trial court found the common law offense of going armed to the terror of the people to be an infamous crime within the meaning of N.C. Gen. Stat. § 14-3(b). This statute states:

> If a misdemeanor offense as to which no specific punishment is prescribed be infamous, done in secrecy and malice, or with deceit and intent to defraud, the offender shall, . . ., be guilty of a Class H felony.

In order for a misdemeanor offense to be elevated under N.C. Gen. Stat. § 14-3(b), the indictment must make the defendant aware that the state seeks conviction on a Class H felony. This Court first addressed this issue in *State v. Preston*, 73 N.C. App. 174, 176, 325 S.E.2d 686, 688 (1985). In *Preston* the defendant was charged with the misdemeanor offense of obstruction of justice. The court convicted the defendant as a Class H felon under N.C. Gen. Stat. § 14-3(b). This Court held that the conviction was improper because the indictment "fails to charge the essential elements of deceit and intent to defraud which are necessary to elevate the misdemeanor offense of obstruction of justice to a felony." *Id.* The Court reasoned that the bill of indictment "must allege all essential elements of the offense to be charged in order that the defendant may be adequately informed of the offense with which he is charged; that he have a reasonable opportunity to prepare his defense." *Id.* Thus, this Court in *Preston* overturned the conviction because the indictment improperly failed to warn the defendant of conviction for a Class H felony by neglecting to use the words "deceit and intent to defraud" from N.C. Gen. Stat. § 14-3(b).

This Court addressed the same issue later in *State v. Clemmons*, 100 N.C. App. 286, 396 S.E.2d at 616 (1990). In *Clemmons* defendant claimed that the Superior Court lacked jurisdiction because his indictments only charged the misdemeanor offenses of solicitation to obstruct justice and attempt to obstruct justice. He was convicted as a felon on these charges pursuant to N.C. Gen. Stat. § 14-3(b). This Court observed that "[e]ach of defendant's three indictments charged that the offenses were infamous, which the statute requires to raise the offenses to a Class H felony. In addition, the indictments detailed defendant's actions involving elements of deceit and intent to defraud." *Id.* at 292, 396 S.E.2d at 619. As a result of the indictment's specific allegations of infamy, deceit, and intent to defraud, the Court held that the conviction could be elevated to a felony. *Preston* and *Clemmons* clearly stand for the proposition that for a conviction to

be elevated under N.C. Gen. Stat. § 14-3(b), the indictment must warn the defendant of a possible elevation to felony status with a specific reference to "infamy," "secrecy and malice," or "deceit and intent to defraud."

Applying *Preston* and *Clemmons* to the instant case, there was no proper warning in the indictment of a possible elevation of the defendant's conviction to felony status. The State claims that defendant's crime was "infamous," and accordingly should be punished as a felony pursuant to N.C. Gen. Stat. § 14-3(b). However, in the bill of indictment charging defendant with the misdemeanor of going armed to the terror of the people, there is no mention of "infamy." The State contends that the indictment is sufficiently suggestive of the "infamy" of the defendant's actions that defendant was adequately informed that the offense charged was intended to be a felony. This argument is not supported by *Preston's* and *Clemmons'* requirement that specific language be used to inform defendant that the State seeks a felony conviction. Furthermore, in the instant case the defendant only became aware that the State sought a felony punishment *after* the jury had decided the issue. In *Preston* we stated that defendant must be "adequately informed of the offense with which he is charged; that he have a reasonable opportunity to prepare his defense." *Preston* at 176, 325 S.E.2d at 688. The State's unexpected move to seek punishment for a Class H felony at the end of the trial clearly violates the principle we set forth in *Preston*. The bill of indictment must give defendant a "reasonable opportunity to prepare his defense."

Accordingly, we reverse the trial court's three separate convictions for discharging a weapon into occupied property. We also reverse the trial court's Class H felony conviction for the crime of going armed to the terror of the people.

Reversed and remanded for resentencing.

Judge JOHNSON concurs.

Judge WYNN concurs in the result only.