Battle, J.
 

 In the bill of exceptions, filed by the-counsel for tlie prisoner, it is alleged that the Court erred, first., in the reception of improper testimony, and secondly, in giving an erroneous instruction to the jury.
 

 With regard to the first alleged error, the circumstances are as follows-: After the solicitor for the State, had introduced
 

 testimony to establish the guilt of the prisoner, Ins counsel called one of his fellow-servants, named Harry, who gave evidence tending to criminate another man, and to. exculpate him. On cross-examination, this witness made some statements, which, together with what he- had stated in his examination in chief, indneed the solicitor to say that he should contend that the witness was an accomplice with the prisoner in the
 
 *306
 
 commission of the offence. The counsel for the prisoner then called his master, who testified that the witness, Harry, and the prisoner had shortly before had a fight, and were not on friendly terms. The solicitor then called a witness to prove that Harry and the prisoner were on friendly terms, and to show this, he was permitted by the Court, after objection by the prisoner’s counsel, to state that he saw Harry and prisoner conversing together the next morning after the transaction, and that he heard the sound of the conversation sufficiently, to know that it was apparently friendly, but he did not hear it with sufficient distinctness to understand its import. The witness, Harry, had not been previously asked whether or not he was on friendly relations Avith the prisoner.
 

 Under the circumstances, and for the sole purpose for which the testimony Avas offered, Ave think it Avas clearly competent. It was not offered to discredit the Avifness, Harry, by proving that he had made contradictory statements before the trial, in Avliich case, it would have been necessary to have asked him Avhat is called the preliminary question;
 
 State
 
 v. Patterson, 2 Ire. Rep. 346;
 
 Edwards
 
 v. Sullivan, 8 Ired. Rep. 302. But it Avas introduced for no other purpose than to rebut the testimony given for the prisoner, to show unfriendly relations betAveen him and the witness. That testimony was offered and relied on by the prisoner’s counsel to sustain the credit of the Avitness, and, surely, the solicitor for the State had a right to reply to it by proving the conduct of the witness and the prisoner towards each other, to show that in fact they AA’ere not unfriendly. The evidence may, possibly, not have been proper, had it been offered in chief, before the prisoner’s master was examined, but Ave are clearly of opinion that it Avas admissible in reply. See
 
 Fain
 
 v. Edwards, 11 Ired. Rep. 305.
 

 The objection to the charge of the Court, applies to that part of it only, which relates to the subject of a rational doubt. As to that, his Honor said to the jury, “that the humanity of the law was such, that if they had a rational doubt upon either of those points,” (to wit, the unlawful assault upon the
 
 *307
 
 prosecutrix, and the identity of the prisoner with the perpetrator,) “they were required to throw those doubts into the scale of the prisoner, and to acquit; that a rational doubt, however, was not a possible doubt, for that might exist in all cases. To exclude this rational doubt, the evidence should be such as that men of fair ordinary capacity would act upon in matters of high importance to themselves. If the evidence here did not produce this degree of belief in their minds, then they ought to acquit the defendant; if it did produce that degree of belief, it authorised a conviction.”
 

 It is manifest, that to the first part of this charge, no just exception can be taken. It is supported by all the elementary writers on the subject, and has received the sanction of this Court. See
 
 State
 
 v.
 
 Hash,
 
 12 Ired. Rep. 382;
 
 State
 
 v.
 
 Frank,
 
 5 Jones Rep. 381. It is to the latter part of the charge, in which his Honor undertakes, the difficult, if not impossible, task of giving a precise and intelligible definition of what a rational doubt is, and what is sufficient to exclude it, that the counsel for the prisoner object. They contend that the standard by which the Judge attempts to measure the evidence which is to exclude a rational doubt, is fallacious in itself, and perilous to a prisoner charged with a crime. They insist that men of fair ordinary capacity, will often act upon very slight evidence in matters of high importance to themselves, and that the very fact of the matter being of high importance to themselves, will the more readily induce them to act upon such slight evidence. Thus, they say, that if one person were to say to another, “Sir, I fear that your house is on fire,” he would instantly rush to the spot without stopping for a moment to enquire whether the information was founded upon a great or slight assurance of its truth; whereas, if the alleged threatened danger of loss was slight or insignificant, the person exposed to it.would probably stop to enquire into the grounds of his informant’s belief, and not a'Ct upon it at all, until he was satisfied of the great probability 'of its being true. It must be confessed that there is great force in the objection,, thus stated and illustrated. The idea "which his Hon-
 
 *308
 
 or intended to convey, was no doubt suggested to him by the following passage from a very popular and learned work on evidence. “A juror ought not to condemn, unless the evidence exclude from his mind all reasonable doubt as to the guilt of the accused, and, as has been well observed, unless he be so convinced by the evidence, that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest.” See 1 Starkie on Ev. 414. At first view, the charge of his Honor may seem to be identical in meaning with this passage, but upon a more minute and critical examination of the two expressions, a maiked difference between them will be observable. Mr. Starkie introduces the idea of
 
 veniun'ing to act,
 
 thereby implying that the party who acts upon the proposed evidence is making a
 
 venture,
 
 which, one way or the other, will be of the highest importance to his own interest. Supposing him to be a man of ordinarily sound mind, and to have the usual prudential regard to his own interest, we may well take it for granted that he will require almost a moral certainty in the evidence, on which he
 
 ventures to act,
 
 in a matter of life or death, or the loss or gain of a large estate. This idea of a
 
 ventu,re,
 
 or a putting to hazard, is not
 
 necessarily
 
 involved in the language used by the learned judge. He merely says that “ to exclude the rational doubt, the evidence should be such as that men of fair ordinary capacity would act upon in matters of high importance to themselves.” Now, we have seen that such men might, and probably would act upon comparatively slight evidence in matters of the highest import to themselves, if what they did, was, at the moment, prompted by their feelings or their interest, and no risk was incurred by it. Bnt if, in the case supposed by the prisoner’s counsel, the owner might by running to his house be exposed to a greater calamity than its destruction, in the event of its not being on fire, we may be sure he would require strong proof that the cry of fire was well founded before he would make the venture, and incur the risk. "We think it likely that the learned Judge intended to convey this idea, but his language, as reported to us in the
 
 *309
 
 bill of exceptions, does not embrace it; and as his charge, in this particular, may have misled the jury upon a point all important to the prisoner, it is erroneous.
 

 Per Curiam,
 

 Judgment reversed, and a
 
 venire de novo.