STATE v. SAM WARREN ET AL.

(Filed 30 April, 1947.)

**1. Criminal Law § 42b—**

On re-direct examination a witness may explain or refute an inference brought out on cross-examination even though such testimony would otherwise be incompetent.

**2. Criminal Law § 81c (3)—**

Admission of evidence must be prejudicial in order for exception to its admission to be sustained.

**3. Criminal Law § 53k—**

An objection to the court's statement of a contention of the State on the ground that it was not supported by the evidence of record cannot be sustained when such contention is a reasonable, logical and fair deduction from the evidence adduced.

**4. Criminal Law § 78e (2)—**

A misstatement of the contentions of the State should be brought to the trial court's attention in time to afford opportunity for correction.

**5. Criminal Law § 12b—**

Our courts have jurisdiction of a prosecution for conspiracy executed within the State even though the conspiracy be formed out of the State.

**6. Conspiracy § 6—**

Evidence in this case *held* amply sufficient to sustain conviction and sentence under charge of conspiracy to steal.

**7. Criminal Law § 81c (4)—**

Where the sentences upon conviction on three separate counts run concurrently and the sentences on the second and third counts do not exceed that of the first, if there is no error in respect to the first count any errors committed in respect to the second and third counts are harmless, and exceptions relating thereto need not be considered.

**8. Criminal Law § 54b—**

The failure of the verdict to refer to one of the counts in the bill of indictment amounts to an acquittal on that count.

APPEAL by defendant, Sam Warren, from *Burney, J.,* at Special Criminal Term, January, 1947. From PITT.

Criminal prosecution on indictment charging Sam Warren, and four confederates, in three counts, (1) with conspiracy to steal 10,000 pounds of sugar, valued at $750, the property of Demain Foods, Inc.; (2) with the larceny of 10,000 pounds of sugar, valued at $750, the property of Demain Foods, Inc., and (3) with receiving the said property knowing

it to have been feloniously stolen. In a fourth count the defendant, Sam Warren, is charged with counseling and procuring the larceny of the sugar in question.

The evidence tends to show that in September, 1946, Demain Foods, Inc., had on hand at its Pickle Factory in Ayden, N. C., a number of 100-pound bags of sugar. Needham H. Loftin, one of the defendants, was night watchman in charge of the warehouse. Sometime in September, Sam Warren and three of his confederates went to the warehouse, late at night, and offered the night watchman $20 a bag for the sugar. This was declined at the time. He promised to think it over, however, and on leaving they requested that he let Warren know later what he would do about it. Several nights thereafter, Warren's three companions returned to get his reply. The night watchman then promised to write Warren at his home in Hickory, Va., which he did, agreeing to let him have the sugar and requesting that he come and get it. On October 4th thereafter, the three confederates came to the warehouse, pretended a hold-up with the night watchman, and got the sugar. The night watchman then went to Warren's home in Virginia to collect for the booty. Warren paid him $200 and promised the balance at a later date.

After arrest, the night watchman made a confession which implicated the others. All were then arrested. Warren at first denied any knowledge of the matter; later he broke down and cried and confessed his part in the crimes, and told the sheriff where he could find the sugar. The defendants offered no evidence at the trial. The night watchman was used as a State's witness.

Verdict: The night watchman pleaded guilty; one of the confederates also pleaded guilty to one or more of the charges, and the jury convicted the remaining three defendants on the first three counts in the bill of indictment. There was no verdict on the fourth count.

Judgment as to Warren: Imprisonment in the State's Prison for not less than five nor more than seven years on the charge of conspiracy; a like sentence on the charge of larceny to run concurrently with the first; and a lesser sentence on the charge of receiving, also to run concurrently with the first.

The defendant Warren appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*J. B. James and W. W. Speight for defendant, appellant.*

STACY, C. J. The defendant Loftin, night watchman and one of the conspirators, was called as a witness for the prosecution. On cross-examination he stated that nothing had been offered him to turn State's evidence: "Not a thing was offered to me to make this statement."

In reply, on redirect examination, the record discloses the following:

"Q. Now, Mr. Loftin, have you ever been offered money not to go on the stand in this case? Defendants object. Overruled; exception.

"A. Well, I can't say exactly that I have, but it was talked.

"Court: Well, who talked to you?

"A. It was different ones.

"Q. Any of the defendants?

"A. No, sir."

The appellant contends that this evidence, which was allowed to go to the jury without any qualifying instruction from the court, necessarily created an unfavorable impression against the defendants and prevented a fair and impartial consideration of the evidence by the jury. *S. v. Strickland,* 208 N. C., 770, 182 S. E., 490; *S. v. Page,* 215 N. C., 333, 1 S. E. (2d), 887, and cases there cited. The trial court was quick to sense the situation and drew from the witness the statement that none of the defendants had talked to him about the matter. Thus, the defendants were exculpated from any suggested impropriety. Nevertheless, it is contended, the jury was left to infer that some third person, acting on behalf of the defendants, might have done the talking. Even so, the defendants were responsible for the occurrence. They first asked the witness on cross-examination whether he had been promised anything to make his statement. The further examination by the solicitor was to clear up the inference left by this inquiry. "A witness has the right, upon his redirect examination, to give evidence explanatory of his testimony brought out upon his cross-examination, although such evidence might not have been strictly proper in the first instance"—First Headnote, *S. v. Orrell,* 75 N. C., 317. See, also, *S. v. Sawyer,* 224 N. C., 61, 29 S. E. (2d), 34. Moreover, the whole incident seems to have been no more than "cross-firing with small shot" between the solicitor and counsel for the defendants, and this over an extraneous matter. Anyhow, no harmful result has been shown. With all the evidence one way, including two confessions, and two of the defendants entering pleas of guilty, the appellant's only hope would seem to be to find some error in law or procedure, rather than a suggestion of jury prejudice. The jury had little or no choice. The exception is not sustained.

In giving the State's contentions against the defendant Warren, the court recited in its charge that "Mr. Loftin wrote him and that he sent after the sugar." Appellant says there is no evidence to support the statement "that he sent after the sugar" and the effect was to place before the jury a material circumstance which does not appear on the record. *S. v. Wyont,* 218 N. C., 505, 11 S. E. (2d), 473; *Smith v. Hosiery Mill,* 212 N. C., 661, 194 S. E., 83. It is in evidence, however, that following the night watchman's letter to Warren, his confederates came to get the sugar. The solicitor contended from this circumstance

that Warren sent them. That such was the case seems to have been taken for granted. It was clearly a reasonable, logical and fair deduction. *S. v. Smith,* 225 N. C., 78, 33 S. E. (2d), 472. At any rate, the matter was not called to the court's attention in time to afford an opportunity for correction, and so it is to be regarded as waived or as a harmless inadvertence. *S. v. Smith,* 221 N. C., 400, 20 S. E. (2d), 360.

The appellant's most earnest contentions have been reserved for the rulings on his motions for directed verdicts, and judgments of nonsuits. He stressfully contends there is no evidence of a conspiracy and that what he did was done in the State of Virginia, of which the courts of this State have no jurisdiction. *S. v. Buchanan,* 130 N. C., 660, 41 S. E., 107.

There is plenty of evidence to show a conspiracy and it can make no difference where it was formed. 11 Am. Jur., 559. It was executed in Pitt County, this State. Consequently, the Superior Court of that county had full authority to investigate the matter. *S. v. Lea,* 203 N. C., 13, 164 S. E., 737. The record amply sustains the conviction and sentence on the charge of conspiracy.

Whether the appellant was properly convicted on the charges of larceny and receiving, assuming that at the time of these offenses he was in the State of Virginia, we need not now decide, for his sentences on these counts were made to run concurrently with his sentence on the conspiracy charge, and they add nothing thereto. The one is of equal duration; the other for a lesser time. Hence, any errors committed in respect of these charges can avail the appellant naught. *S. v. Beal,* 199 N. C., 278, 154 S. E., 604; *S. v. Lea, supra.* The verdict makes no reference to the fourth count in the bill. This amounts to an acquittal on that count. *S. v. Hampton,* 210 N. C., 283, 186 S. E., 251.

A careful perusal of the record leaves us with the impression that no exception has been presented which would necessitate a new trial. The verdict and judgment will be upheld.

No error.