STATE OF NORTH CAROLINA v. EZEKIEL PATTERSON

No. 25

(Filed 14 November 1973)

1. **Homicide § 12— first degree murder — indictment**

An indictment for murder in the first degree contains all necessary averments and allegations and is sufficient if it follows the language of G.S. 15-144.

2. **Criminal Law § 42— admission of weapons**

Weapons may be admitted in evidence when there is evidence tending to show that they were used in the commission of a crime.

3. **Criminal Law § 42; Homicide § 20— murder weapon — sufficiency of identification**

In this homicide prosecution, a shotgun was sufficiently identified as the murder weapon to render it admissible in evidence where an eyewitness testified that it "is either the shotgun or very similar to the shotgun" the witness saw defendant use to shoot the victim; furthermore, the admission of the shotgun, if erroneous, did not constitute prejudicial error in light of the overwhelming evidence of defendant's guilt.

4. **Criminal Law §§ 34, 39, 89— murder case — explanation of bias toward defendant — testimony that defendant had raped witness**

In a prosecution of defendant for the murder of his wife wherein defense counsel on cross-examination elicited statements from defendant's stepdaughter that she disliked defendant and harbored a feeling of ill will toward him, testimony by the stepdaughter on redirect examination that she disliked defendant because he had raped her was competent since the witness was entitled to explain the circumstances giving rise to her bias against defendant.

5. **Criminal Law § 162— necessity for motion to strike testimony**

When a question asked a witness is competent, exception to his answer, when incompetent in part, should be taken by motion to strike out the part that is objectionable.

State v. Patterson

6. Homicide § 21— first degree murder — sufficiency of evidence

　　In this first degree murder prosecution, the record contains plenary evidence from which the jury could find that defendant, motivated by ill will and express malice toward his wife, shot her with deliberation after having premeditated the deed.

7. Homicide §§ 17, 18— prior infliction of personal injuries — admissibility

　　In a prosecution of defendant for first degree murder of his wife, evidence that on various occasions during the three years prior to her death defendant intentionally inflicted personal injuries on his wife was admissible as bearing on intent, malice, motive, and premeditation and deliberation.

8. Criminal Law § 113; Homicide § 23— gauge of murder weapon — reference in charge — harmless error

　　Although the record fails to reveal the gauge of the shotgun offered in evidence as the murder weapon, references in the charge to the murder weapon as "a .410 gauge shotgun" were not prejudicial error since the gauge of the gun is not a material fact in issue.

DEFENDANT appeals from judgment of *Webb, S. J.,* 13 November 1972 Session, LENOIR Superior Court.

　　Defendant was tried on a bill of indictment, proper in form, charging him with the first degree murder of his wife Annetta Patterson who died on 24 August 1972 from a shotgun wound in the back of her head.

　　At the trial defendant was represented by employed counsel; on appeal, by appointed counsel.

　　The State's evidence tends to show that defendant and his wife Annetta Patterson had been married about five years but had separated and were living separate and apart on 24 August 1972. On 27 August 1969 defendant stabbed his wife with a butcher knife. In July 1970 he sliced her back with a knife. In January 1972 he told Vivian Green, his wife's mother, that he intended to kill Annetta but would not injure the grandchildren. In February 1972 defendant attempted to assault his wife with a broken bottle but fled when officers were called.

　　Annetta Patterson lived in an apartment with her daughters, Pamela and Vickie, and worked at Caswell Center Training School in Kinston. On the morning of 24 August 1972 she got off work and arrived at her residence about 7 a.m., riding in the automobile of one James E. Marshburn. The defendant, accompanied by one Linwood Hood, walked across the street to the passenger side of the vehicle and accused his wife of going

with Mr. Marshburn. Defendant got into the back seat of the car and the accusatory conversation continued. Clifton Wiggins, a son of Annetta Patterson, in response to a telephone call from his sister Pamela, came to the scene with a pistol in his hand and ordered defendant and Linwood Hood to leave. Marshburn drove them away and as they left defendant yelled, "I'll be back but you won't know what time and I'll be back to get all of you."

Later that day James E. Marshburn saw defendant on the street in Kinston and defendant told him: "Somebody is going to get hurt today . . . . If I kill them they can't kill me. . . . They abolished capital punishment, don't have capital punishment anymore."

About 9 p.m. that night, 24 August 1972, Annetta Patterson was in her living room with a friend named Tyrone Fisher. Defendant entered the house through the front door, carrying "what looked to me like a put-together shotgun." He pushed his wife into a corner and shot her from a distance of three feet. Tyrone Fisher ran from the house and concealed himself in a soybean patch nearby. Defendant entered the bean patch and Fisher overheard him say to Linwood Hood: "I done and shot Annetta in the head and killed her . . . A nigger ran out here in the bean patch . . . I am going to get him and we'll have to get out because the law will be here in a little while." Shortly thereafter Fisher heard sirens approaching, returned to the house and saw Annetta Patterson lying on her back, apparently dead.

Tyrone Fisher identified a shotgun, State's Exhibit 5, as the murder weapon and said "if it isn't the one that I saw Zeke Patterson using on the night of August 24, it's the sister to it. This is either the shotgun or very similar to the shotgun I saw Zeke shoot Annetta with on the night of August 24, 1972."

At a time estimated to be about 8:45 p.m. on the night of 24 August 1972, Laurence Odell Foye saw defendant and Linwood Hood going down Forest Street in Kinston. As Foye walked with them a short distance, defendant told Foye he had just shot his wife in the head with a .410 shotgun. "Zeke said he had been mad with that bitch, he said there was another nigger, another man, her boyfriend. . . . Zeke told me he used a .410 shotgun. He said he walked right in and stuck it by her head and shot her." Defendant told Foye he had thrown the gun in some bushes but didn't say where. Defendant then asked

Foye to be a witness for him if the police came and to tell them he, Foye, and the defendant were drinking. Foye replied that he could not jeopardize himself.

Defendant offered no evidence. The jury returned a verdict of guilty of murder in the first degree, and defendant was sentenced to life imprisonment. He appealed, assigning errors noted in the opinion.

*Robert Morgan, Attorney General; Walter E. Ricks III, Assistant Attorney General; Conrad O. Pearson, Assistant Attorney General; C. Diederich Heidgerd, Associate Attorney, for the State of North Carolina.*

*Herbert B. Hulse, Attorney for defendant appellant.*

HUSKINS, Justice.

Defendant's first assignment of error is based on denial of his motion to quash the bill of indictment. He contends the bill "fails to set forth with a degree of particularity and specificity the elements of the crime of murder in the first degree as to enable the defendant to adequately prepare a defense for the same." In pertinent part, the bill of indictment reads as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH DO PRESENT, That Ezekiel Patterson late of the County of Lenoir on the 24th day of August 1972, with force and arms, at and in the said county, feloniously, wilfully, and of his malice aforethought, did kill and murder Annetta Patterson contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

The quoted indictment follows the language of G.S. 15-144 which provides:

"In indictments for murder . . . it is not necessary to allege matter not required to be proved on the trial; but in the body of the indictment, after naming the person accused, and the county of his residence, the date of the offense, the averment 'with force and arms,' and the county of the alleged commission of the offense, as is now usual, it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law . . . and any bill

of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder . . . . "

[1]   An indictment for murder in the first degree contains all necessary averments and allegations and is sufficient if it follows the language of the statute. *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972) ; *State v. Mays,* 225 N.C. 486, 35 S.E. 2d 494 (1945) ; *State v. Arnold,* 107 N.C. 861, 11 S.E. 990 (1890). Defendant's first assignment of error is overruled.

Defendant next contends that admission in evidence of the weapon identified as State's Exhibit 5 was prejudicial error. The weapon was admitted over objection after Tyrone Fisher, an eyewitness to the shooting, testified: "The item you are showing me marked State's Exhibit 5 is a shotgun and if it isn't the one I saw Zeke Patterson use on the night of August 24, it's the sister to it. This is either the shotgun or very similar to the shotgun I saw Zeke shoot Annetta with on the night of August 24, 1972."

[2]   The general rule is that weapons may be admitted in evidence "where there is evidence tending to show that they were used in the commission of a crime." *State v. Wilson,* 280 N.C. 674, 187 S.E. 2d 22 (1972). Any article shown by the evidence to have been used in connection with the commission of the crime charged is competent and properly admitted in evidence. *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968). "So far as the North Carolina decisions go, any object which has a relevant connection with the case is admissible in evidence, in both civil and criminal trials. Thus, weapons may be admitted where there is evidence tending to show that they were used in the commission of a crime or in defense against an assault." 1 Stansbury's North Carolina Evidence § 118 (Brandis Rev. 1973).

[3]   We regard the testimony of Tyrone Fisher sufficient to identify State's Exhibit 5 as the gun used in the shooting of Annetta Patterson. In *State v. Macklin,* 210 N.C. 496; 187 S.E. 785 (1936), shotgun found in defendant's room was held properly admitted in evidence following testimony that it was "like the gun" defendant was seen carrying the night deceased was shot. But if it be conceded, *arguendo,* that State's Exhibit 5 had not been sufficiently identified as the murder weapon rendering its admission erroneous, in view of the eyewitness testimony that defendant shot his victim with a shotgun, its

admission was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967); *State v. Fletcher* and *State v. St. Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971). Evidence of defendant's guilt is so overwhelming that admission of technically incompetent evidence is harmless unless it is made to appear that a different result likely would have ensued had the evidence been excluded. *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Defendant's second assignment of error is overruled.

[4] Pamela Francine Wiggins, daughter of the deceased and stepdaughter of defendant, testified as a State's witness. She related several occasions on which defendant had cut her mother with a knife and testified regarding a threat defendant made against her mother on the morning of 24 August 1972. On cross-examination defense counsel elicited statements that she disliked the defendant and harbored a feeling of ill will toward him, thus impeaching the credibility of the witness by showing bias. On redirect examination by the solicitor, Pamela testified as follows: ·

"I have disliked Ezekiel Patterson ever since he started arguments and all with my mother. I have some other reasons for disliking him, all the other things he had done to me.

"Q. What are some of the things that he's done to you to cause you to dislike Mr. Ezekiel Patterson?

"A. He raped me."

After the answer had been given, defense counsel objected but made no motion to strike. The objection was overruled. Defendant assigns as error the admission of the statement by Pamela Wiggins that defendant had raped her, contending that in this prosecution for murder the State may not offer evidence tending to show that he had committed another offense.

Of course, it is a general rule of evidence that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. Various exceptions to this general rule of inadmissibility, as well recognized as the rule itself, are discussed in *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). The admissibility of the evidence challenged by this

assignment of error, however, is not governed by the rule of evidence discussed in *State v. McClain, supra.* Here, evidence was elicited from Pamela Wiggins on cross-examination calculated and intended to show bias and to discredit her testimony. This calls for application of the rule that where evidence of bias is elicited on cross-examination the witness is entitled to explain, if he can, on redirect examination, the circumstances giving rise to bias so that the witness may stand in a fair and just light before the jury. "A party cannot be allowed to impeach a witness on the cross-examination by calling out evidence culpatory of himself and there stop, leaving the opposing party without opportunity to have the witness explain his conduct, and thus place it in an unobjectionable light if he can. In such case the opposing party has the right to such explanation, even though it may affect adversely the party who cross-examined. Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so." *State v. Glenn,* 95 N.C. 677 (1886). *Stansbury* states the rule in these words: "If circumstances evidencing bias are elicited on cross-examination, the witness is entitled to explain them away, if he can, on redirect examination, after which the cross-examining party may produce evidence nullifying the effect of the explanation." 1 Stansbury's North Carolina Evidence § 45 (Brandis Rev. 1973). *Compare State v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871 (1951); *State v. Warren,* 227 N.C. 380, 42 S.E. 2d 350 (1947); *State v. Oscar,* 52 N.C. 305 (1859).

[5] Furthermore, there was no motion to strike the answer of the witness to which objection is made. "In case of a specific question, objection should be made as soon as the question is asked and before the witness has time to answer. Sometimes, however, inadmissibility is not indicated by the question, but becomes apparent by some feature of the answer. In such cases the objection should be made as soon as the inadmissibility becomes known, and should be in the form of a motion to strike out the answer or the objectionable part of it." 1 Stansbury's North Carolina Evidence § 27 (Brandis Rev. 1973). We said in *Gibson v. Whitton,* 239 N.C. 11, 79 S.E. 2d 196 (1953): "The rule is that where a question asked a witness is competent, exception to his answer, when incompetent in part, should be taken by motion to strike out the part that is objectionable." *Accord State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970); *State v. Battle,* 267 N.C. 513, 148 S.E. 2d 599 (1966). Defendant's third assignment of error is overruled.

State v. Patterson

[6, 7] Defendant's several assignments of error based on denial of his motions for nonsuit, to set aside the verdict, in arrest of judgment, and for a new trial are overruled. The record contains plenary evidence from which the jury could find that defendant, motivated by ill will and express malice toward his wife, shot her with deliberation after having premeditated the deed. In addition to his expressed intent to kill her, there is evidence that on various occasions during the three years prior to her death defendant intentionally inflicted personal injuries upon his wife. This evidence was admissible as bearing on intent, malice, motive, and premeditation and deliberation. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969) ; *State v. Gales,* 240 N.C. 319, 82 S.E. 2d 80 (1954).

[8] Likewise, defendant's assignment of error addressed to the charge has no merit. References in the charge to the murder weapon as "a .410 gauge shotgun" was not prejudicial error. "The rule is that the trial court in charging a jury may not give an instruction which assumes as true the existence or non-existence of any material fact in issue. See G.S. 1-180 as rewritten." *State v. Cuthrell,* 235 N.C. 173, 69 S.E. 2d 233 (1952). Even so, the only substantive evidence in the record as to the gauge of the murder weapon appears in the testimony of Laurence Odell Foye, an acquaintance of defendant, who testified that while walking with defendant and Linwood Hood defendant said "he went into the house and shot her with a shotgun, a .410, that he shot her in the head." Although the record fails to reveal the gauge of the shotgun offered in evidence (State's Exhibit 5), the gauge of the gun is not "a material fact in issue." Defendant's guilt or innocence does not depend on the gauge of the weapon he used.

Defendant having failed to show prejudicial error, the verdict and judgment will be upheld.

No error.