Shearing, J.,
concurring in part and dissenting in part:
The conviction of appellant Calvin Taylor should be affirmed. The evidence of a prior allegedly bad act was properly admitted to rebut the implication of witness bias elicited by appellant’s counsel. However, in view of the majority’s rejection of that view, I concur in the remand of the case to the district court.
C.C. was a prosecution witness who was a neighbor of appellant and was the first adult to whom the nine-year-old victim told about appellant’s actions. On cross-examination appellant’s counsel attempted to show that C.C. and her husband, G.C., were biased against appellant. The following dialogue took place during cross-examination between C.C. and appellant’s counsel:
Q. Mrs. [C.C.], you talked with your husband about what happened?
A. Yes.
Q. Did he like Calvin at that time?
A. He did not know Calvin. Neither did I.
Q. So he never talked to you about Calvin before this happened?
A. No.
Q. You never heard him say degrading things about him?
A. Oh, yes. Yes, he did that, I want to say two or three weeks before this happened to [victim]. I was at work, and I always call and check in on the kids on my break, and my husband said to me: You know, C.C., it’s really strange. That little [neighbor] girl ... he had — Calvin had some chairs sitting out in back of his house—
*856 MR. PLATER: Your Honor, may I interrupt this witness for a second?
(Both Counsel approached the bench.)
BY MR. PLATER:
Q. You were telling us that your husband had previously mentioned something about Calvin; correct:
A. Yes.
Q. And was the previous statement derogatory or degrading of Mr. Taylor?
A. Well, I can only tell you what my husband told me that he saw.
Q. What I am asking is: Did he say anything degrading about Mr. Taylor?
A. I guess it was degrading.
Q. In fact, isn’t it true that you knew your husband did not like Mr. Taylor before this happened?
A. No, I cannot say that.
Thus defense counsel himself elicited the testimony about the allegedly bad act of which appellant now complains. Furthermore, through dogged persistence he was able to get C.C. to state that the comment was in fact degrading, thereby leaving the potential impression with the jury that she had a bias which might affect her credibility or the weight that ought to be given her testimony.
Once appellant opened this door, basic fairness militated in favor of permitting respondent to rehabilitate its witness by putting her husband on the stand and having him state exactly what he said to his wife in order to negate the suggestion that the comment reflected a bias which might have infected C.C.’s testimony. Indeed, the district court relied on the fact that the door was opened by appellant in allowing G.C.’s testimony. The court stated: “My initial reaction as I told counsel in chambers, was to exclude the testimony. However, the door has been opened, and I do believe the State is therefore entitled to go forward.” Once appellant elicited information regarding the conversation between G.C. and C.C., and tried to characterize it as indicating prejudice, respondent had the right to complete the picture by allowing G.C. to testify as to what he actually said to his wife.
Applicable to this case is the line of cases addressing the “open door” or “invited error” doctrine.[1] This doctrine is firmly rooted *857 in case law. Cases establish that ordinarily inadmissible evidence may be rendered admissible when the complaining party is the party who first broached the issue. I will set forth just a few of the many cases in which the evidence is even more prejudicial than in the instant case.
In State v. Patterson, 200 S.E.2d 16 (N.C. 1973), the Supreme Court of North Carolina held that where evidence of bias is elicited on cross-examination, the witness is entitled to explain if he can, on redirect exam, the circumstances giving rise to the bias. In Patterson, the trial court found defendant guilty of first degree murder of his wife. Id. During the trial, Pamela Wiggins, the daughter of the deceased wife and stepdaughter of the defendant, testified as a prosecution witness. Id. at 20. On cross-examination, defense counsel elicited statements that Pamela disliked the defendant and harbored a feeling of ill will toward him, thus impeaching her credibility by showing bias. Id.
During the State’s redirect, Pamela testified as follows:
A. I have disliked [defendant] ever since he started arguments and all with my mother. I have some other reasons for disliking him, all the other things he had done to me.
Q. What are some of the things that he’s done to you to cause you to dislike [defendant]?
A. He raped me.
(Objection to strike by defense counsel overruled.)

Id.

In upholding the admissibility of Pamela’s statement that the defendant had raped her, the court stated that although
it is a general rule of evidence that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense ...[,] [h]ere evidence was elicited from Pamela Wiggins on cross-examination calculated and intended to show bias and to discredit her testimony. This calls for application of the rule that where evidence of bias is elicited on cross-examination the witness is entitled to explain, if he can, on redirect examination, the circumstances giving rise to bias so that the witness may stand in a fair and just light before the jury.
Id. The court then went on to support its holding by quoting an 1886 case:
*858 “A party cannot be allowed to impeach a witness on the cross-examination by calling out evidence culpatory of himself and there stop, leaving the opposing party without opportunity to have the witness explain his conduct, and thus place it in an unobjectionable light if he can. In such case the opposing party has the right to such explanation, even though it may affect adversely the party who cross-examined. Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so.”
Id. (quoting State v. Glenn, 95 N.C. 677 (1886)).
Moreover, in State v. Recor, 549 A.2d 1382 (Vt. 1988), the Supreme Court of Vermont held that in a prosecution for child sexual abuse, the cross-examination of a complaining witness which was designed not only to demonstrate bias against defendant but also to show that the bias was unwarranted opened the door for prosecution to question that witness on redirect regarding an earlier, uncharged sexual assault by defendant.
In Recor, defense counsel, during cross-examination, attacked the complaining witness’ credibility by attempting to show a pronounced bias against defendant. Id. at 1385. Specifically, counsel questioned the witness about her long-term dislike of defendant, and the witness ultimately admitted that she had disliked defendant since 1979 and had hated him since at least 1982. Id.
After cross-examination, the prosecution moved the court for permission to question the witness about the 1982 incident. The trial court, reasoning that defense counsel had opened the door by attempting to show both bias and its cause, ruled that such questioning would be proper. Id. Consequently, on redirect, the witness testified that one reason for her dislike of defendant was that he sexually assaulted her in 1982. Id.
The Vermont Supreme Court upheld the trial court’s decision allowing the rebuttal testimony, stating:
Defense counsel sought to impeach the credibility of the complaining witness by painting an incomplete picture of unwarranted bias. The State’s response was to complete this picture with appropriate detail .... [DJefense counsel attempted not only to demonstrate bias by the complaining witness, but also attempted to provide a reason for the bias. Once the issue of why the complaining witness disliked the defendant was raised on cross-examination, it was proper for the State to present a complete picture for the jury. Thus, the trial court properly determined that defendant should not benefit from a selective presentation of the facts on cross-examination.
*859 Id. at 1386.
In U.S. v. Panebianco, 543 F.2d 447 (2d Cir. 1976), the defendant asked for reversal because the jury heard testimony of threats made on the life of a witness (Mobley) by defendant. During direct, the prosecutor steered Mobley away from mentioning these threats; however, during cross-examination, defense counsel tried to cast doubt on Mobley’s credibility by asking her in detail about her having set up her employer by planting heroin on him for the police to find. On redirect, the government was allowed, over objections to clarify the matter by pointing out that Mobley had planted the heroin because defendant had threatened to kill her. Id. at 455. The Second Circuit Court of Appeals upheld the lower court’s decision allowing the testimony on redirect, stating, “after . . . counsel had attempted to impeach Mobley by harping on her having framed [her employer], the evidence of the threats served to rehabilitate the witness by supplying a justification for her actions at the time.” Id. at 455. The court further stated:
[W]here cross-examination has been used to elicit an incomplete picture which gives a distorted impression of a witness’ credibility, the prosecution should generally be allowed to set the record straight on redirect.

Id.

In U.S. v. Lerma, 657 F.2d 786 (5th Cir. 1981), the Fifth Circuit Court of Appeals held that in a prosecution for drug offenses in which a prosecution witness testified that defendant was in possession of a gun at the time of his arrest, witness’ opinion testimony that carrying a weapon violated state law was not reversible error where that opinion was elicited only after persistent cross-examination by defense counsel. The court stated:
Any error in the admissibility of statements concerning the legal consequences of carrying a gun was invited by his attorney’s questioning. The accepted rule regarding statements procured in this manner is that “where the injection of allegedly inadmissible evidence is attributable to action of the defense, its introduction does not constitute reversible error.” Having deliberately pursued a strategy that created a potential error at trial, [defendant] cannot seek relief from the untoward results of that strategy on appeal.
Id. at 788 (citations omitted).
Numerous other cases support the admissibility of G.C.’s testimony under the theory that the door was opened by appellant. In U.S. v. Whitworth, 856 F.2d 1268, 1285 (9th Cir. 1988), the Ninth Circuit Court of Appeals stated:
*860 Under the rule of curative admissibility, or the “opening the door” doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court’s discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission.
In State v. Crawford, 619 S.W.2d 735, 740 (Mo. 1981), the Missouri Supreme Court stated:
On redirect examination it is proper to examine a witness on any matters which tend to reflate, weaken or remove inferences, impressions, implications or suggestions which may have resulted from his testimony on cross-examination, notwithstanding the facts elicited may be prejudicial to the defendant.
(Citations omitted.)
In Western Show Co. Inc. v. Mix, 173 A. 183, 184 (Pa. 1934), the Pennsylvania Supreme Court stated:
“If irrelevant and collateral matter is elicited [by appellant], without objection, from plaintiff’s witness on cross-examination, can the plaintiff rebut such collateral matter by the testimony of other witnesses?” Appellant can hardly be heard to raise this question. The injection by [appellant] of the “irrelevant and collateral matter” into the case left plaintiff but a single choice. It had either to offer no evidence in answer to it, and thereby risk its possible effect on the jury, which it had no way of measuring; or it could offer the rebutting evidence and take the risk of reversal because of the doctrine now advanced by appellant. No court of justice should put a litigant to such an alternative; rather, it should permit him, by means of the contradictory evidence he had on hand, to rebut, as far as he could, the erroneous evidence elicited by his antagonist. Anything short of this would not even savor of fairness.
In the instant case, appellant potentially discredited C.C.’s testimony by painting her and her husband as biased against appellant. C.C. was an important prosecution witness and one which the State could not afford to have discredited. The district court was therefore correct in allowing G.C.’s testimony to rehabilitate C.C. by demonstrating what his comments actually were. Furthermore, G.C.’s observation was, in and of itself, innocuous, compared to the testimony in cases cited above, most of which involved allegations of actual criminal conduct. The court should not apply a more stringent standard to child sexual abuse cases.
The State has argued that the testimony was admissible on *861 other grounds which this court has rejected, but once appellant himself opened the door, the evidence was properly admitted. “Strange cattle having wandered through a gap made by himself, he cannot complain.” Sisler v. Shaffer, 28 S.E. 721, 721 (1897).
The appellant was not subject to double jeopardy. Although initially the prosecution moved for a mistrial, that motion was not granted. It was only after the defense moved for a mistrial that the court declared a mistrial. Thus, the entire reliance on Hylton v. District Court, 103 Nev. 418, 743 P.2d 622 (1987), is misplaced. When analyzing whether double jeopardy bars retrial, both the United States Supreme Court and this court have made a distinction between those cases in which the prosecution moves for mistrial and those in which the defense moves for mistrial or fails to object to the prosecution’s motion for mistrial.
In Oregon v. Kennedy, 456 U.S. 667 (1981), the United States Supreme Court stated:
Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the “manifest necessity” standard.
But in the case of a mistrial declared at the behest of the defendant, quite different principles come into play. Here, the defendant himself has elected to terminate the proceedings against him, and the “manifest necessity” standard has no place in the application of the Double Jeopardy Clause.
Id. at 672.
In Melchor-Gloria v. State, 99 Nev. 174, 178 (1983), this court stated that “[a]s a general rule, a defendant’s motion for, or consent to, a mistrial removes any double jeopardy bar to repros-ecution.” The exception to this general rule is when the prosecutor intends to provoke a mistrial or otherwise engages in “overreaching” or “harassment,” and where there is “intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.” Id. at 178. In that case the double jeopardy bar will apply, despite the defendant’s motion for, or “consent” to, the mistrial. Id. See also, Gaitor v. State, 106 Nev. 785 (1990) (double jeopardy bar did not apply because failure of defense counsel to object or express an opinion to the district court regarding the propriety of the mistrial implied consent and indicated tacit approval); Collier v. State, 103 Nev. 563 (1987) (when defendant is granted a mistrial because of prosecutorial or judicial overreaching and the governmental conduct in question was intended to “goad” the defendant into moving for a mistrial, reprosecution will be barred).
There is no evidence in this record that indicates that the *862 prosecutor engaged in overreaching or harassment or that she intended to subvert the protections offered by the double jeopardy clause. It is understandable that this issue was not raised by the appellant on appeal. He had no cause to complain.

Although some cases indicate that the terminology “doctrine of curative admissibility,” “open door doctrine” and “invited error doctrine” are used interchangeably, the “curative admissibility” cases place more emphasis on the inadmissibility of the complaining party’s evidence. Definitions of the “curative admissibility” doctrine usually are along these lines: “This doctrine provides that when one party introduces inadmissible evidence, with or *857 without objection, the trial court may allow the adverse party to offer otherwise inadmissible evidence on the same subject if it is responsive to the evidence in question.” Lala v. People’s Bank & Trust Co. of Cedar Rapids, 420 N.W.2d 804, 807-08 (Iowa 1988) (emphasis supplied).