Richard Bronner's conviction of the rape and sexual battery of a four-year old child should be upheld.
The "prior bad acts" testimony, the majority reverses on, was properly admitted since the defense "opened the door" or invited any error of this testimony.
A trial court enjoys broad discretion in the admission of evidence and will not be reversed on appeal absent an abuse of discretion that has materially prejudiced the defendant. State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399. An abuse of discretion is more than error of law or judgment. It implies "perversity of will, passion, prejudice, partiality or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. In order for a trial court to abuse its discretion, the result of its determination must be so grossly violative of fact and logic that such result evidences the exercise of passion or bias instead of reason. State v. Jenkins (1984), 15 Ohio St.3d 164, 222. The trial court did not abuse its discretion here in admitting Taylor's testimony as to why he disliked Bronner.
As a threshold matter, it must be recognized that Taylor's testimony did not arise in a vacuum. Called as a witness by the state, Taylor made no mention of his dislike of Bronner during direct examination, and, indeed, the careful direct examination of the state in no way called for an exploration of why Taylor disliked Bronner. It was the defense, on cross examination, that chose to discredit Taylor by alleging bias against Bronner, replete with questions implying Taylor was biased against Bronner since he was black. Having opened the door to an inquiry of bias precludes Bronner's complaint that the state unfairly invited Taylor to set the record straight as to the real reason for his "bias" against Bronner. Only after the defense opened the bias door did the state step through and explore Taylor's "bias" against Bronner.
The trial court properly admitted evidence of "other bad acts" by Bronner in response to Bronner's own arguments. Bronner's entire defense at trial was that Taylor coached his four-year-old grandson to make up these sexual allegations against him because Bronner was black. Bronner claimed Taylor could not stand having one biracial grandchild and another one on the way. In his opening statement, Bronner claimed:
 "Folks, you are also going to hear evidence that Bill Taylor was not fond of Mr. Bronner, they did not have a good relationship. Obviously, Mr. Bronner is African-American, as was [N.B.]'s natural father was also African-American.
 "I believe the evidence will show, ladies and gentlemen, that Mr. Taylor didn't like that, he didn't like the fact that his daughter was dating an African-American and was unhappy about the fact that he had a biracial grandchild.
 "Folks, the evidence will also show that in January of 2001, just two or three weeks before these allegations were made, Mr. Taylor, who had custody of [N.B.] at the time, learned that his daughter, Angel, was pregnant with Richard Bronner's child. I don't believe he was very happy about that and I think the evidence will demonstrate that.
 "Just weeks after learning this, these allegations are made when William Taylor contacts the Akron Police Department and says that my grandchild, [N.B.], was molested."
On cross-examination of Taylor, Bronner again attacked his credibility on the basis of his dislike for Bronner due to his race. By alleging that Taylor had a racial motive to fabricate false allegations against Bronner, the defense "opened the door" for the state to inquire as to the real reasons why Taylor disliked Bronner.
The only case in Ohio to address this issue is a case remarkably similar to this one from the Eighth District Court of Appeals. In that case, the Eighth District Court of Appeals upheld the introduction of prior bad acts in a child rape case where the defense "opened the door" by its cross-examination on the issue of bias. The court explained its reasoning as follows:
 "The introduction of evidence of other bad acts can be prejudicial and is generally prohibited by Evid.R. 404(B). Prejudicial error will not be found, however, when the defense `opens the door' to this evidence.
 "In this case, the defense cross-examined Schmidt regarding whether Fasnacht's family was against defendant simply because of his race. On redirect, the prosecutor elicited that there had never been any mention of racial motives, but the older child did relate an incident where defendant had touched her girlfriend. Accordingly, from the record presented, we hold that defendant opened the door to this testimony and we do not find it to constitute reversible error." (Citations omitted.) State v. Patton (May 27, 1993), 8th Dist. No. 62020.
Several other state supreme courts and federal courts have ruled on the issue and have overwhelmingly allowed the state to inquire about other bad acts of a defendant on cross-examination to explain why a witness may be biased against a defendant.
In holding that the prior bad acts testimony was admissible in a case involving the sexual assault on a child, the Vermont Supreme Court held:
 "Defense counsel sought to impeach the credibility of the complaining witness by painting an incomplete picture of unwarranted bias. The State's response was to complete this picture with appropriate detail. The purpose of the witness' testimony on redirect, thus, was not to establish the character of the defendant[.]
"* * *
 "[D]efense counsel attempted not only to demonstrate bias by the complaining witness, but also attempted to provide a reason for the bias. Once the issue of why
the complaining witness disliked the defendant was raised on cross-examination, it was proper for the State to present a complete picture for the jury. Thus, the trial court properly determined that defendant should not benefit from a selective presentation of the facts on cross-examination." (Citations omitted.) State v. Recor (1988), 150 Vt. 40, 44-45.
When addressing this issue, the Supreme Court of North Carolina stated: "This calls for application of the rule that where evidence of bias is elicited on cross-examination the witness is entitled to explain, if he can, on redirect examination, the circumstances giving rise to bias so that the witness may stand in a fair and just light before the jury." State v. Patterson (1973), 284 N.C. 190, 196. "`If circumstances evidencing bias are elicited on cross-examination, the witness is entitled to explain them away[.]'" Id., quoting 1 Stansbury's North Carolina Evidence § 45 (Brandis Rev. 1973).
On ruling on this same issue, in a rape case, the Supreme Court of Delaware rejected the exact reasoning of the majority that the "other bad acts" evidence was impermissible because it was only "more" evidence of bias and did not rebut the bias of the witness.
"In other words, Lloyd [the defendant] argues that because the misconduct evidence was merely more evidence of bias and not evidence tending to rebut the defense notion of bias, it was not material to the issue of whether the complaining witness was telling the truth.
"We disagree. Evidence is material if it tends, of itself or in connection with other evidence, to influence the result reached by the jury. If the jury believed the stepdaughter's testimony regarding prior incidents with Lloyd, the picture the defense was trying to present, that of a spiteful, lying young woman, would be dispelled. Therefore, this evidence directly rebutted evidence presented by the defense tending to show why the stepdaughter should not be believed. In that light, it was clearly material to the central issue in the case — whether the complaining witness was telling the truth.
"* * *
"Bias of the complaining witness was, essentially, Lloyd's entire case. We believe it was entirely proper, in rebuttal, for the State to attack the notion underlying Lloyd's entire case." (Citations omitted.)Lloyd v. Delaware (1991), 604 A.2d 418.
Interestingly enough, all of the cases previously cited, Patton,Recor, Patterson, and Lloyd, involved sexual assault charges, and the prior bad acts testimony held properly admitted, related to prior sexual attacks by the defendant — evidence obviously more prejudicial and damaging in a rape case than testimony that a defendant was a drug user and was convicted of the same.
What is even more disturbing about the reversal of Bronner's convictions here is the overwhelming evidence of his guilt.
Not only did the four-year-old come into court and testify as to the rape, other signs of sexual abuse were present to corroborate the four-year-old's testimony. Evidence was admitted that N.B. started wetting the bed again after being completely potty trained, that he was uncharacteristically aggressive and clingy, and that he engaged in sexually provocative behavior, such as stripping in front of his preschool class.
Finally, and most compelling, Bronner himself, in a taped statement, admitted to sexual conduct with the child. Although Bronner told four different versions over the course of the investigation, the last version on tape that was played for the jury accused N.B. of putting a pornographic video in a VCR, watching it while Bronner was asleep and then awakening him by putting his penis to Bronner's mouth.
Bronner admitted to the inappropriate sexual conduct between the two but claimed little N.B. instigated everything and in essence attacked him while he slept.
The fact that the jury heard about Bronner's prior drug usage and conviction was meaningless to these convictions. Bronner's own words convicted him when he tried to place the blame at the feet of a four-year old for sexually attacking him.
I, strongly, dissent.